OPINION OF THE COURT

Per Curiam.

Petitioner has been charged with engaging in behavior that violated certain canons of the Code of Judicial Conduct. While it is apparent that petitioner’s conduct was improper, we do not find that it was so egregious as to warrant removing him from the Bench. The commission’s recommendation, therefore, is rejected and petitioner is hereby censured.
Petitioner is an attorney who has served as an Acting Village Justice in Walden since 1963 and as a Justice in the Montgomery Town Court since 1973. The events that concern this court, however, are unrelated, either directly or peripherally, to petitioner’s judicial position.
In 1972, petitioner was retained by Charles Duryea to represent him in connection with a work-related injury. Duryea’s workers’ compensation claim was settled for $2,000 in 1975. Petitioner waived any fee for his services in the matter.
Having received the settlement, Duryea asked petitioner to commence a personal-injury action against the employer. Although he knew that such an action was barred by the exclusive remedy provisions of the Workers’ Compensation Law, petitioner nevertheless acceded to Duryea’s request. Petitioner did not tell Duryea that the lawsuit could not be maintained.
Over the next four years, petitioner made repeated misrepresentations to Duryea to mislead him into believing that a civil action had been commenced and was progressing toward trial. In fact, no papers had been filed at all. Finally, on January 4,1980, petitioner began a civil action on Duryea’s behalf. By this time, the action was barred not only by the Workers’ Compensation Law, but by the Statute of Limitations as well. Again, petitioner did not advise Duryea of these legal obstacles. After Duryea retained another attorney and filed a grievance against petitioner, the complaint in the civil action was with *85 drawn. Petitioner received no fees or any other sums from Duryea during this period.
On February 20, 1980, petitioner made an oral offer to pay Duryea $10,000 if he would not file a grievance for professional misconduct. This offer was confirmed in writing. As Duryea proceeded to file a grievance, the money was never paid as promised. On the basis of this grievance, petitioner was suspended from the practice of law for one year beginning July 1, 1982.
Duryea commenced an action for malpractice against petitioner. This was ultimately settled for $1,500.
A formal written complaint was served on petitioner by the commission in October 1982. Three charges were preferred. Charge I pertained to the events leading up to the serving of the civil action complaint in January 1980. Charge II focused on petitioner’s attempt to induce Duryea not to file a grievance by offering to pay $10,000 to him. Charge III arose from petitioner’s suspension from practice by the Appellate Division. On each charge, petitioner was alleged to have violated Canons 1 and 2 (A) of the Code of Judicial Conduct, as well as the corresponding Rules of the Chief Administrator of the Courts Governing Judicial Conduct (22 NYCRR 100.1, 100.2 [a]). In addition, on the first two charges, petitioner was accused of violating Canon 3 (A) (1) and its parallel rule (22 NYCRR 100.3 [a] [1]).*
*86 Petitioner concedes that the events occurred as described. He seeks to explain his misbehavior by referring to a mental condition of depression, claiming that it interfered with his exercising sound judgment and prevented him from confronting Duryea with the reality of his legal situation. Petitioner received treatment for this in 1968, but received no further aid until he began consulting a psychiatrist in February 1981. By affidavit, his doctor has certified that petitioner is mentally competent and is capable of discharging his judicial duties. In further mitigation, petitioner notes that his handling of the Duryea matter was his only misconduct, and that his performance in both private practice and as a Judge was otherwise blameless.
Before assessing the misconduct and petitioner’s explanation, we must preliminarily dismiss one of the charged violations outright. The commission found that petitioner’s conduct was contrary to the provisions of Canon 3 (A) (1). Canon 3 is concerned primarily with the performance of judicial duties. Indeed, virtually every provision in that canon relates directly to the manner in which a Judge should exercise his or her powers and manage his or her courtroom. There is no contention that petitioner here was derelict in any manner in discharging his obligations to the public in his judicial capacity. Consequently, there was no basis for charging petitioner with violating Canon 3 (A) (1).
Attention now turns to the merits of the other charges of the proceeding. In explaining his behavior, petitioner undermines his own position by noting that this episode was his only lapse over a period of many years. That petitioner failed only once belies his claim of severe depression. He argues that this circumstance only manifests that he was able to overcome his psychological problems in all other instances, but was unable to handle the Duryea matter. Although petitioner may have been somewhat debilitated by his mental state, we do not believe that his conduct is excused by this.
In passing on the sanction to be imposed against a Judge found to have engaged in misconduct, this court is presented with one of the rare occasions when it may review findings of fact and determine of its own accord what *87 penalty shall be imposed against a party (Judiciary Law, § 44, subd 9). We consider how and to what extent the wrongful behavior erodes the important interest of protecting the esteemed position which the judiciary must hold before society in order to carry out its duties effectively.
We do not find that the events warrant Judge Kelso’s removal. Petitioner’s misrepresentations to his client were improper and completely unjustified. Critically, though, Duryea suffered no prejudice by these acts. The civil action desired by Duryea unquestionably was barred by the exclusivity of the workers’ compensation remedy. No right of action was lost by any failure on petitioner’s part to commence a suit against Duryea’s employer. Insofar as we might look askance at petitioner’s method of practice in commencing the action in 1980, the obstacles of the Workers’ Compensation Law and the Statute of Limitations are matters that may be waived by a defendant so that it would not be a complete abuse of professional standards to initiate a suit precluded by either or both of these defenses. It must also be noted that petitioner never received any fees from Duryea nor did he ever retain any funds that were to be paid over to Duryea.
Petitioner’s offer to pay Duryea not to file a grievance was improper, to say the least; it is to be condemned. However, it was tendered openly, in writing, and witnessed. Basically, it was a clumsy effort to assuage an angry former client who also pressed a malpractice claim without apparent foundation and for which he eventually received a settlement from petitioner. Petitioner’s conduct fell short of proper professional conduct as an attorney and he has been punished therefor. He has not concealed the wrongdoing or obstructed the commission’s investigation.
It is concluded that these events compel petitioner’s censure, but that removal is unnecessary. Petitioner has been candid and co-operative. He did not profit by his misconduct and he did not injure nor destroy anyone’s rights or property. There is no evidence of any other professional improprieties. He has been punished for his behavior by being suspended from private practice for one year; thus, there is no reason to fear that the public will perceive that petitioner is going unpunished or that the *88 matter is being suppressed. Petitioner’s problems with depression, now ended, also should be taken into account in fashioning the sanction. Last, and perhaps most important, petitioner has faithfully carried out his judicial duties and has never entangled his public office with this incident of his private practice. In short, petitioner’s conduct marred the integrity of the Bench, but it does not rise to a level where it must be concluded that petitioner can no longer serve effectively or that his continued services will be contrary to the best interests of the judiciary.
Accordingly, the determined sanction should be rejected, without costs, and the sanction of censure imposed.

 In pertinent part, the canons provide:
Canon 1:
“A Judge Should Uphold the Integrity and Independence of the Judiciary
“An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.”
Canon 2 (A):
“A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
“A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.”
Canon 3 (A) (1):
“A Judge Should Perform the Duties of His Office Impartially and Diligently
“The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:
“A. Adjudicative Responsibilities.
“(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.”