OPINION OF THE COURT
 

 Per Curiam.
 

 Petitioner, a Justice of the Wellsville Town Court, was charged with judicial misconduct after having been disbarred for conduct involving dishonesty, fraud and deceit in connection with his handling of an estate in his capacity as a private attorney. Relying on the factual findings of the Referee in the disbarment proceeding, which findings were confirmed by the Appellate Division, the State Commission on Judicial Conduct found petitioner guilty of violating sections 100.1 and 100.2 (a) of the Rules Governing Judicial Conduct (22 NYCRR 100.1, 100.2 [a]) and Canons 1 and 2 (A) of the Code of Judicial Conduct and determined that he should be removed. Petitioner now disputes the Commission’s determination, arguing that the Referee’s findings were inaccurate and unreliable. We disagree.
 

 According to the evidence before the Referee at the Fourth Department, petitioner had been acquainted with Edward Antoon and his wife Edna for some 50 years before Edward’s death on September 26, 1989. Petitioner had drafted Edward’s will and was retained as attorney for his estate shortly after Edna’s
 
 *713
 
 appointment as executrix. However, there was never a retainer agreement formalizing petitioner’s relationship with the estate or establishing a fee for his services.
 

 Within a few weeks of her appointment as executrix, Edna Antoon moved to Ohio, leaving petitioner with a general power of attorney. Acting as attorney for the estate, petitioner opened a bank account in the estate’s name and retained exclusive control over the checks and check register. Between October 30, 1989 and April 14, 1993, some 50 checks totaling $399,320 were drawn on the estate’s account and made payable to petitioner. Of these, only the first 17 (totaling $174,520) were signed by Edna Antoon and some of those had been presigned in blank. Between April 4, 1991 and March 13,1992, petitioner used his power of attorney to issue an additional 18 checks (totaling $106,200) to himself. During the same period, other checks were drawn against the estate, but all of these were signed by Mrs. Antoon herself.
 

 Mrs. Antoon died on March 16, 1992, and petitioner became the successor executor pursuant to the terms of Edward Antoon’s will. After Mrs. Antoon’s death, petitioner issued another 15 checks (totaling $118,600) to himself. Petitioner characterized these payments as attorney’s fees and executor’s commissions, although he never obtained court approval for them as required by SCPA 2110, 2111, 2310 and 2311, nor did he file the affidavit of fees and commissions that is required by the Uniform Rules for Surrogate’s Court (22 NYCRR 207.60 [a], [e]).
 

 With regard to his other reporting obligations, petitioner submitted a Petition to Determine Estate Tax on June 25,1990 in which he indicated that his total attorney’s fee to complete the estate would be $156,575, a figure far below the $399,320 he actually received. He stated in that document that his fees for 1990 and 1991 would be $99,000 and $10,555 respectively, although it was subsequently determined that he ultimately paid himself $123,000 and $86,700 for those years. The petition, along with a conforming Declaration of Executor’s Commissions and Attorney’s Fees, was submitted to the Internal Revenue Service.
 

 During the disbarment proceeding in the Fourth Department, petitioner acknowledged that he was experiencing financial difficulties and that he had used the money he took from the estate’s bank account for his personal and business expenses. Petitioner also acknowledged that he had not
 
 *714
 
 provided any statements or itemized bills for his services, nor did he ever discuss with Mrs. Antoon any of the specific checks he had issued to himself. Petitioner claimed, however, that he had had a general conversation with Mrs. Antoon in June of 1990 in which she indicated to him that the attorney’s fee described in the estate’s tax submissions was "not very much” and that she wanted him to be paid more.
 

 The Referee found incredible petitioner’s claim that Edna Antoon had intended and specifically authorized the more than $200,000 "fee” he had appropriated in addition to the $156,000 he declared on the Petition to Determine Estate Tax. Adopting the Referee’s conclusion that petitioner had misappropriated estate funds and had engaged in conduct involving dishonesty, the Appellate Division issued an order disbarring petitioner for conduct adversely reflecting on his fitness to practice law (219 AD2d 156). Petitioner did not attempt to appeal from this determination.
 

 Following the Appellate Division’s decision, the Commission on Judicial Conduct charged petitioner with judicial misconduct for his mishandling of the Antoon estate. In response, petitioner filed a verified answer admitting some of the Commission’s allegations and denying others. Relying on the decision in the disbarment proceeding and on petitioner’s failure to dispute the salient factual allegations, the Commission’s counsel moved for a summary determination pursuant to section 7000.6 (c) of the Commissioner’s Operating Procedures and Rules (22 NYCRR 7000.6 [c]). Petitioner filed a sworn statement in opposition, but did not request oral argument. Instead, without raising any new factual matters, petitioner merely made a series of conclusory arguments concerning the Appellate Division Referee’s credibility determination.
 

 The Commission summarily determined that the misconduct charge against petitioner had been established. On April 2, 1997, the Commission concluded that petitioner should be removed from judicial office. The Commission inferred, based on the Declaration of Executor’s Commissions and Attorney’s Fees that Mrs. Antoon signed, that petitioner’s authorized fee had been $156,575, that petitioner had paid himself an additional $124,145 without Mrs. Antoon’s knowledge or consent during her lifetime and, finally, that petitioner had taken another $118,600 after she died without obtaining the necessary court permission. Petitioner’s actions, in the Commission’s view, constituted a "gross” abuse of trust, demonstrating that he "lacks the integrity to sit on the bench and judge the conduct of others.”
 

 
 *715
 
 Initially, we reject petitioner’s arguments that the Commission acted inappropriately when it summarily determined the judicial misconduct charge against him on the basis of the findings in the prior attorney disciplinary proceeding. As we have previously stated, "[t]he statutory requirement authorizing the commission to make a determination after a hearing does not require the commission to go through a meaningless formal hearing where no issue of fact is raised”
 
 (Matter of Petrie v State Commn. on Judicial Conduct,
 
 54 NY2d 807, 808).
 

 Neither the "broad” powers ostensibly given to him in the Antoon will nor the purported wish of Mrs. Antoon that petitioner be "well paid” for his services justifies the unauthorized and unreported removal of large sums of money from Edward Antoon’s estate. Further, we are not persuaded by petitioner’s contention that the Declaration of Executor’s Commissions and Attorney’s Fees he filed reflected only the amounts that had been deducted on the estate’s income tax returns and was therefore not actually false. Notwithstanding petitioner’s irrelevant discussion about the nature of the form, the fact remains that the Declaration was the only information provided to the Surrogate’s Court as to petitioner’s fee and, as such, was misleading. Further, the Declaration, which was cosigned by Ms. Antoon, was the only evidence of the fee amount that the executrix had known of and approved, leaving the record bare of support for petitioner’s present claim that she had agreed to a considerably higher amount
 
 (see, Matter of Boulanger,
 
 61 NY2d 89).
 

 The evidence before the Commission, consisting principally of the record of the disbarment proceeding, provides convincing proof that petitioner helped himself to more than $200,000 of estate funds without either notifying or obtaining the permission of the executor or the Surrogate. His abuse of the trust reposed in him by the Antoons and his concealment of his defalcation make his nonjudicial misdeeds at least as sanctionable as those of the Village Court Justice whose conduct as an executor led to his removal in
 
 Matter of Boulanger (supra).
 

 Accordingly, the determined sanction of removal should be accepted, without costs.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur in Per Curiam opinion; Judge Wesley taking no part.
 

 
 *716
 
 Determined sanction accepted, without costs, and Honorable W. Joseph Embser removed from the office of Justice of the Wellsville Town Court, Allegany County.