OPINION OF THE COURT
 

 Per Curiam.
 

 Petitioner, a Justice of the Mount Kisco Town Court, Westchester County, seeks review of a determination of the State Commission on Judicial Conduct. The Commission decided that petitioner should be removed from office because of (1) conduct as an attorney in converting funds from an escrow account and (2) conduct as a judge which, the Commission found, was intended to retaliate against the Westchester County District Attorney for making a previous complaint to the Commission about petitioner. In view of the conduct of petitioner that led to this and five previous Commission proceedings, we accept the sanction as determined by the Commission.
 

 
 *481
 
 Petitioner’s Previous History with the Commission
 

 In 1993, the Commission sent petitioner a Letter of Dismissal and Caution addressing two instances of petitioner’s misuse of his judicial position. He had directed some defendants who appeared before him “to attend a village board meeting to complain about snow emergency regulations” and thus to “advance [petitioner’s] personal position on . . . snow emergency signs.” He had also made, from the bench, a complaint to an attorney for a carting company that was a defendant in a criminal proceeding before him; petitioner had expressed unhappiness with the company’s operation of trucks on a Mount Kisco street. The Commission dismissed the complaint against petitioner that was based on these incidents, but cautioned him to adhere to the relevant provisions of the Rules of Judicial Conduct.
 

 In 1996, the Commission admonished petitioner on the basis of two separate series of events. The first of these occurred during a criminal case before petitioner in which the defendant was the son of people petitioner had represented. Petitioner telephoned the complaining witness ex parte and made favorable remarks about the defendant that persuaded the witness to withdraw the complaint. Petitioner then dismissed the charges, over the prosecution’s objection, without disclosing either his prior relationship with the defendant’s family or his conversation with the witness. The Commission found that petitioner’s telephone call and his failure to disclose it created an “appearance of favoritism.” The other basis for the 1996 admonition was a practice followed by petitioner for a few months in late 1993 and early 1994 of conducting arraignments in the Mount Kisco police station, rather than in a public courtroom.
 

 In 1997, petitioner received two more Letters of Dismissal and Caution from the Commission. The first of these related to a lawsuit by petitioner’s sister against the Village of Mount Kisco, in which petitioner had listed himself as his sister’s attorney and engaged in settlement discussions with counsel for the insurance carrier. The Commission told petitioner that “[a] part-time judge should not act as an attorney in a lawsuit against the municipality in which the judge sits.”
 

 Later in 1997, the Commission again cautioned petitioner, this time on the basis of a letter petitioner had written on judicial stationery to a former public official “concerning files that [the recipient] had supposedly kept on [petitioner] and oth
 
 *482
 
 ers.” Petitioner had “demanded a list of all those upon whom such files were maintained.” The Commission told petitioner that “[b]y using judicial stationery in connection with what was essentially a private, political dispute, you used the prestige of your office to further your personal interests.” The Commission added: “It is troubling that even on reflection you insist that the use of judicial stationery under these circumstances was appropriate.”
 

 In 1999, petitioner received his last Letter of Dismissal and Caution. This one concerned an attorney who had appeared before him. The Commission’s 1999 letter stated that “in several cases, you advised clients of [the attorney] that he had made a complaint to the Commission against you and inquired as to whether they would seek your recusal.” The Commission said that by taking this approach—i.e., by making the attorney’s clients aware of the problem, rather than simply deciding for himself whether he should be recused—petitioner was “interfering with attorney-client relationships in apparent retaliation for the complaint made against you.” The Commission also noted that, in one case where the attorney was defense counsel, petitioner “restored the case to the court calendar a day after it had been disposed of so that [he] could discuss an advisory opinion concerning disqualification with [the attorney].” This conduct, the Commission’s letter stated, “constituted abuse of your judicial powers” because petitioner had placed the defendant again in jeopardy in order to “make a point” with her attorney. The Commission added that this “extraordinary procedure . . . created the reasonable impression that you were retaliating against [the attorney].”
 

 The Present Proceeding
 

 A. The Escrow
 

 The first of the two charges against petitioner that the Commission sustained in this proceeding arose out of petitioner’s private law practice. In 1999, while petitioner was representing the executrix of an estate, a tax refund check, made out to the executrix, was sent to petitioner. Without his client’s knowledge or consent, petitioner deposited the check in his escrow account and then wrote a check on that account to himself for his attorney’s fee.
 

 As a result of this action, petitioner was suspended from the practice of law for one year.
 
 (Matter of Cerbone,
 
 295 AD2d 66 [2d Dept 2002].) In choosing to suspend petitioner rather than
 
 *483
 
 to disbar him the Appellate Division relied upon “the totality of circumstances, including the absence of venality.”
 
 (Id.
 
 at 68.)
 

 B. The Dispute with the District Attorney
 

 The second charge sustained by the Commission in this proceeding is based on petitioner’s inappropriate expressions of displeasure with the Westchester County District Attorney during 2001 and 2002. This displeasure apparently grew out of the proceeding which led the Commission to admonish petitioner in 1996. As noted above, the Commission found that petitioner had acted improperly by having an ex parte conversation with a complaining witness that led her to withdraw a criminal complaint. Petitioner evidently blamed the District Attorney for bringing this incident to the Commission’s attention, and as a result, the Commission found in the present case, he engaged in the following conduct:
 

 1. He “prepared and distributed to defense attorneys who appeared before him in criminal cases a form letter which he asked them to complete and mail to the office of the District Attorney.” The form letter disclaimed any professional or social relationship between the defendant in the criminal case and petitioner.
 

 2. When distributing the form letter, petitioner “frequently made remarks to the effect that the District Attorney had previously filed a complaint against him which had cost him half a million dollars to defend against and that due to illnesses in his family he had neither the time or money to defend himself against future complaints.” These remarks were made in open court, in the hearing of an assistant district attorney and of defense lawyers and defendants present for the call of the criminal calendar.
 

 3. Petitioner “recused himself
 
 sua sponte
 
 from four shoplifting cases while stating that he was doing so because the District Attorney had failed to prosecute former Mount Kisco employees for their private use of computers belonging to the Town, despite clear evidence of their crimes.” As a result of petitioner’s recusal, the cases had to be reassigned to petitioner’s co-justice, who would not sit until the following month, thus necessitating an extra court appearance for defendants and their lawyers.
 

 4. Petitioner stated on several occasions to those present in his court “that his office telephone was ‘tapped,’ that the
 
 *484
 
 District Attorney was keeping ‘dossiers’ on him, and that he was ‘being watched.’ ”
 
 *
 

 C. The Commission’s Ruling
 

 Based on its findings of fact, the Commission concluded that petitioner had violated eight provisions of the Rules of Judicial Conduct (22 NYCRR part 100): sections 100.1 (general requirement of “high standards of conduct”); 100.2 (A) (obligation to “respect and comply with the law and . . . act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary”); 100.3 (B) (2) (obligation to “require order and decorum in proceedings”); 100.3 (B) (3) (obligation to be “patient, dignified and courteous” to litigants and others); 100.3 (B) (4) (obligation to perform duties “without bias or prejudice”); 100.3 (B) (7) (obligation to “dispose of all judicial matters promptly, efficiently and fairly”); 100.4 (A) (2) (prohibition on extrajudicial activities that “detract from the dignity of judicial office”); and 100.4 (A) (3) (prohibition on extrajudicial activities that “interfere with the proper performance of judicial duties” or are “incompatible with judicial office”). The Commission also determined that, because petitioner “converted funds entrusted to his care” and “used his courtroom as a forum for expressing his personal grievances against the District Attorney,” he “lacks the judgment and temperament to sit on the bench and is unfit for judicial office.”
 

 Discussion
 

 Our role in this proceeding is to review the Commission’s findings of fact and conclusions of law, and to decide whether the sanction determined by the Commission, or another sanction or no sanction, should be imposed. (NY Const, art VI, § 22 [d].)
 

 Petitioner does not challenge the Commission’s findings of fact. We agree with those findings and with the Commission’s
 
 *485
 
 conclusions that petitioner violated sections 100.1, 100.2 (A) and 100.3 (B) (3), (4) and (7) of the Rules of Judicial Conduct. It is not necessary to consider the other sections relied on by the Commission.
 

 Petitioner’s sole argument is that the sanction of removal is too severe for this case. In making this argument, he relies on our statement in
 
 Matter of Cunningham
 
 (57 NY2d 270, 275 [1982]): “Removal is an extreme sanction and should be imposed only in the event of truly egregious circumstances .... Indeed, we have indicated that removal should not be ordered for conduct that amounts simply to poor judgment, or even extremely poor judgment ...” (citations omitted).
 

 Petitioner points out that we have sometimes rejected the sanction of removal where we found misconduct to be based on failings of judgment rather than on more profound flaws of character.
 
 (See Matter of Kelso,
 
 61 NY2d 82 [1984] [judge who, as a private lawyer, mishandled a case and misled his client about it, but did not receive any fee or other sum from his client];
 
 Matter of LaBelle,
 
 79 NY2d 350, 363 [1992] [improper rulings that were “motivated primarily by compassion”];
 
 Matter of Kiley,
 
 74 NY2d 364, 370 [1989] [improper actions at the request of friends with no “element of venality, selfish or dishonorable purpose”].) The Commission stresses that the present case, unlike those cited above, involved the conversion of client funds, and relies on
 
 Matter of Boulanger
 
 (61 NY2d 89 [1984]),
 
 Matter of Tamsen
 
 (100 NY2d 19 [2003]) and
 
 Matter of Embser
 
 (90 NY2d 711 [1997]) as holding that financial improprieties are the sort of egregious conduct that warrant removal. Petitioner responds that in
 
 Boulanger, Tamsen
 
 and
 
 Embser
 
 there was an element of “venality,” which the Appellate Division, in suspending petitioner from the practice of law for one year, found to be absent here.
 

 In deciding the appropriate sanction we consider both the severity of the misconduct involved in this proceeding and petitioner’s extensive prior history. This is his
 
 sixth
 
 encounter with judicial discipline, and several of the prior proceedings were, as this one is, based on more than one incident. While the facts of the cases differ greatly, many of them involve a common theme: petitioner seems incapable of understanding, despite repeated warnings, that a judge performing judicial duties must both act and appear to act as an impartial arbiter serving the public interest, not someone with an axe to grind. A judge who does not know this, and is not capable of learning it, should not be on the bench.
 

 
 *486
 
 Accordingly, the determined sanction should be accepted without costs.
 

 Chief Judge Kaye and Judges G.B. Smith, Ciparick, Rosenblatt, Graffeo, Read and R.S. Smith concur in per curiam opinion.
 

 Determined sanction accepted, without costs, and Joseph J. Cerbone removed from the office of Justice of the Mount Kisco Town Court, Westchester County.
 

 *
 

 Petitioner asserted at the hearing before the Commission in this case that his telephone had indeed been “tapped” from 1993 to 1997. The basis for this allegation was that, until 1997, two lines used by petitioner’s court were linked to the telephone system of the police department (which was in the same building), so that the police department’s recording equipment could record calls originating from those two lines. After petitioner became aware of and complained about this situation, the District Attorney conducted an investigation and concluded that, while the connection between the court and police lines did exist, neither court nor police personnel had been aware of it.
 

 Evidence before the Commission also established that the District Attorney had in her file four documents relating to the matter that resulted in the 1996 admonition. These documents, in petitioner’s view, constituted a “dossier.”