[3 NE3d 1139, 980 NYS2d 891]

In the Matter of Glen R. George, a Justice of the Middletown Town Court, Delaware County, Petitioner. State Commission on Judicial Conduct, Respondent.

Argued November 14, 2013; decided December 10, 2013

## POINTS OF COUNSEL

*Law Offices of Thomas K. Petro*, Kingston (*Thomas K. Petro* of counsel), for petitioner. The facts of the case and the record of the case do not support the Commission on Judicial Conduct's determination to remove Judge George as Justice of the Middletown Town Court, and the sanction should be modified to a censure. (*Matter of Cunningham*, 57 NY2d 270; *Matter of Reedy*, 64 NY2d 299; *Matter of Conti*, 70 NY2d 416; *Matter of Bulger v State Commn. on Jud. Conduct*, 48 NY2d 32; *Matter of Assini*, 94 NY2d 26; *Matter of McGee v State Commn. on Jud. Conduct*, 59 NY2d 870; *Matter of Cohen [State Commn. on Jud. Conduct]*, 74 NY2d 272; *Matter of VonderHeide [State Commn. on Jud. Conduct]*, 72 NY2d 658.)

*Robert H. Tembeckjian*, Albany (*Edward Lindner, Mary C. Farrington* and *S. Peter Pedrotty* of counsel), for respondent. I. Petitioner committed serious misconduct when he: (1) ignored the Commission on Judicial Conduct's prior caution, failed to disqualify himself from *People v Johnson* and dismissed the charge without notice to the prosecution and (2) twice dissuaded a litigant from filing a claim in his court. (*Matter of Young [State Commn. on Jud. Conduct]*, 19 NY3d 621; *Interboro Mut. Indem. Ins. Co. v Karpowic*, 116 Misc 2d 947; *Matter of Duckman*, 92 NY2d 141; *People v Key*, 45 NY2d 111; *Matter of Conti*, 70 NY2d 416; *Matter of Assini*, 94 NY2d 26; *Matter of Robert*, 89 NY2d 745; *Matter of Lenney*, 71 NY2d 456; *Matter of LaBombard [State Commn. on Jud. Conduct]*, 11 NY3d 294; *Matter of Fabrizio*, 65 NY2d 275.) II. Petitioner should be removed from office.

(*Matter of Conti*, 70 NY2d 416; *Matter of Reedy*, 64 NY2d 299; *Matter of Edwards*, 67 NY2d 153; *Matter of Bulger v State Commn. on Jud. Conduct*, 48 NY2d 32; *Matter of Mulroy*, 94 NY2d 652; *Matter of Roberts*, 91 NY2d 93; *Matter of Skinner*, 91 NY2d 142; *Matter of Fabrizio*, 65 NY2d 275; *Matter of Vonder-Heide [State Commn. on Jud. Conduct]*, 72 NY2d 658; *Matter of Young [State Commn. on Jud. Conduct]*, 19 NY3d 621.)

## OPINION OF THE COURT

Per Curiam.

Petitioner Glen R. George has been a non-lawyer Justice of the Middletown Town Court, Delaware County, since 1985. He commenced this proceeding to review a determination of the State Commission on Judicial Conduct sustaining two charges of misconduct and determining that he should be removed from office. Upon our plenary review of the record, we sustain the finding of misconduct and conclude that removal is the appropriate sanction.

In its Formal Written Complaint, the Commission brought two charges, each involving allegations of misconduct while petitioner was acting in his judicial capacity. The first arose from his long-standing relationship with Lynn Johnson, who appeared in petitioner's court after being issued a traffic ticket for a seat-belt infraction. Petitioner, a retired State Trooper, had worked for a local family-run company founded by Johnson from 1982 until 1990 and again from 1999 to 2009. Johnson sold the company to two of his sons in 1997 but continued to be employed there as a paid consultant after his children assumed ownership. Petitioner and Johnson had known each other since childhood, having attended school together, and had a social as well as employer-employee relationship that spanned several decades.[1]

Johnson's appearance in the Middletown Town Court in connection with the seat-belt violation occurred the day after petitioner retired from the most recent of his two stints of employment with the Johnson family company. The prosecutor assigned to that court was not scheduled to be present that day

---

1. For example, petitioner officiated at the wedding of one of Johnson's sons and had been a guest at other Johnson family weddings as well as Johnson's 50th birthday celebration. When petitioner was home recuperating after a major surgery, Johnson visited him several times. Petitioner indicated that he also developed a close relationship with Johnson's sons after they took over the company.

and, as a result, the District Attorney's office was not represented. When Johnson's case was called, petitioner presided over the matter despite his social and professional relationship with Johnson and without adjourning the case so that he could disclose that relationship to the District Attorney's office.

During the proceeding, Johnson claimed that there was a discrepancy in the vehicle information listed on the traffic ticket. Johnson—who restored cars as a hobby and owned many vehicles—asserted that he had been driving a red Mercedes Benz at the time of the stop (as the ticket indicated) but he alleged that the model year for his vehicle was 1976—not 2000, the model year listed on the ticket. To support this contention, Johnson proffered a title document indicating that he owned a 1976 Mercedes Benz. Crediting Johnson's allegation, petitioner apparently concluded that the State Trooper—who was also not in attendance—had erred when recording the model year of the vehicle. Petitioner then cited this purported defect as the basis to dismiss the seat-belt violation against Johnson sua sponte, without notifying the prosecutor or the State Trooper. Consequently, the prosecutor had no opportunity to object to that disposition, to request a hearing concerning the factual dispute relating to the vehicle Johnson was driving at the time of the stop, or to seek leave to amend the ticket to correct the purported error.[2]

The second charge of misconduct involved ex parte communications petitioner had with a prospective litigant in which petitioner discussed the merits of the case in a manner that discouraged the litigant from commencing a small claims action in his court. The prospective litigant, a resident of Long Island,

---

2. The dissent asserts that "there is no allegation of any legal error made by Judge George" (dissenting op at 331)—but this is not true. The Commission found that petitioner's dismissal of the charge without providing the District Attorney notice or an opportunity to be heard violated Criminal Procedure Law §§ 170.45 and 210.45, which require that the People be given "reasonable notice" prior to dismissal of a simplified traffic information. At the hearing, petitioner acknowledged the error. Of course, legal error is not a basis for removal of a judge. It is generally relevant only to the extent that it may, in some cases, support an inference of bias or favoritism. The dissent's suggestion that "[n]o one disputes" (dissenting op at 331) that the ticket issued to Johnson was defective finds no support in the record. Because neither the District Attorney nor the Trooper was present to oppose or otherwise respond to Johnson's factual allegation relating to the vehicle he was driving at the time of the motor vehicle stop, the validity of his statement was not tested in the adversarial process. In any event, even assuming the ticket contained a clerical error as Johnson alleged, this would not excuse petitioner's conduct.

owned vacation property in Middletown. In February 2010, he went to Middletown Town Court intending to initiate a proceeding against his neighbor, a longtime resident of the town that petitioner had known for decades and with whom petitioner was friendly. The prospective litigant approached the Court Clerk and explained the nature of his dispute, claiming that the neighbor was wrongfully diverting water onto his property, causing damage. Having overheard the allegations, petitioner injected himself into the conversation, expressing the view that the neighbor was the "senior property holder" and was therefore permitted to divert water onto the litigant's property, further speculating that the deeds relating to the adjoining properties likely permitted such activity. Discouraged, the litigant did not complete the process for initiation of a claim at that time.

The controversy over water diversion apparently continued to persist between the landowners and, 11 months later, the litigant called the Middletown Town Court with the intention of filing a small claims action against his neighbor. Because the Court Clerk was busy, petitioner answered the telephone. When the litigant identified himself and explained the nature of the inquiry, petitioner did not transfer him to the clerk or tell him to call back later. Instead, petitioner again discussed the merits of the case with the litigant, asking who bought the parcel first and who had the "senior parcel." Upon being informed that the neighbor owned the property first, petitioner repeated his prior opinion that the neighbor had a right to divert water onto the litigant's property. Believing that petitioner had a prejudicial view of the claim in favor of the neighbor, a "local," the litigant again decided not to pursue the claim.

Four months later, however, after he filed a complaint against petitioner with the Commission on Judicial Conduct, the litigant again contacted the Town Court. This time, when petitioner answered the telephone, the litigant stated that he was bringing a small claims action against his neighbor and that he did not want petitioner to preside over the matter. Petitioner responded that the claim could be filed a few days hence before the other Middletown Town Justice. The Court Clerk subsequently informed the litigant that petitioner disqualified himself from the litigant's case because he knew about the complaint filed with the Commission. When the litigant told his neighbor that petitioner would not be hearing the case, the neighbor apparently ceased diverting water onto his land, rendering further judicial proceedings unnecessary.

After a hearing and a referee report sustaining both charges, the Commission issued a determination finding that petitioner's conduct violated the Rules Governing Judicial Conduct, particularly (22 NYCRR) sections 100.2 and 100.3, warranting his removal from office. Petitioner seeks review of that determination pursuant to NY Constitution, article VI, § 22 and Judiciary Law § 44.

In this Court, petitioner contends that his conduct, though evidencing poor judgment, was not sufficiently egregious to justify removal from office. He characterizes the traffic infraction against Johnson as a "minor" matter that was so inconsequential that his dismissal of the charge could not be viewed as conferring any "material benefit" upon Johnson. He attempts to distinguish that proceeding from other "ticket-fixing" cases where speeding tickets were dismissed or reduced to zero point infractions, permitting defendants to avoid the imposition of points or increases in insurance premiums. Petitioner notes that he engaged in no subterfuge, dismissing the ticket in open court, and alleges that he notified the Assistant District Attorney assigned to his court of the disposition after the fact (the Assistant District Attorney had no recollection of having received such notice and characterized the court's dismissal of the claim in his absence as "out of the ordinary"). Finally, petitioner claims that he treated Johnson just as he would any other litigant, maintaining that he has always been a "stickler" when it comes to clerical errors on traffic tickets, and the record failed to demonstrate that he gave Johnson preferential treatment.

We find petitioner's arguments to be unpersuasive. Although the charge against Johnson was relatively minor, petitioner's decision to hear a case involving a friend and former employer without even disclosing the existence of the personal relationship to the District Attorney was, under the circumstances presented here, no small matter. The Rules Governing Judicial Conduct direct that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned" (22 NYCRR 100.3 [E] [1]). A judge's perception of the nature or seriousness of the subject matter of the litigation has no bearing on the duty to recuse or disclose a relationship with a litigant or attorney when necessary to avoid the appearance of bias or favoritism. Indeed, although petitioner denies giving Johnson preferential treatment, he does not defend his decision to sit on the case and acknowledges in his brief that he made the "wrong choice."

Were this an isolated incident it might be viewed as an uncharacteristic lapse in judgment. However, here there is a significant aggravating factor. In 2000, the Commission on Judicial Conduct issued a Letter of Dismissal and Caution to petitioner with respect to his decision to preside over four cases involving Johnson's then daughter-in-law. Petitioner knew the daughter-in-law, not only by virtue of his friendship with Lynn Johnson but also because she routinely visited the workplace during petitioner's employment with the firm. In the first case, which involved a charge of driving while intoxicated, petitioner accepted a guilty plea to a reduced charge and imposed a sentence of a fine and three years' probation. Thereafter, petitioner sat on three cases in which the daughter-in-law was charged with violating the conditions of her probation, on one occasion taking her into a private conference room for an ex parte discussion in which he offered to assist her with her alcohol abuse problem because of their "friendship," providing her with a home telephone number where he could be reached at any time.

After investigating charges against petitioner relating to the daughter-in-law's cases, the Commission dismissed the proceeding without making a determination of misconduct, privately advising petitioner:

> "Because of your long relationship with the Johnson family, you should have considered whether presiding over [those] cases gave the appearance that you could not be impartial. You should have at least disclosed the relationship on the record and entertained objections to your presiding. It was especially important to do so after you had offered to personally counsel Ms. Johnson."

If petitioner had not already been aware of the potential appearance of bias and favoritism emanating from a decision to sit on a case involving a member of the Johnson family, the Commission put him on notice of that concern. Yet, despite the Letter of Caution, petitioner indicated during the investigatory interview and at the hearing that he presided over Lynn Johnson's case without even considering recusing himself or adjourning the matter so that he could disclose their personal and business relationship to the opposing party.[3] Showing no

---

3. Petitioner later testified: "I felt--I still feel that a ten-plus year separation from employer-employee relation was more than sufficient to avoid the

sensitivity to the aroma of favoritism such a favorable disposition could engender, petitioner then sua sponte dismissed the charge without the knowledge or consent of the District Attorney's office, following a procedure that was apparently unusual in that jurisdiction. Given the circumstances, petitioner's actions raise a substantial question concerning his ability or willingness to conform his behavior to the requirements of the Rules Governing Judicial Conduct.

These concerns are compounded in this case by the second misconduct incident, the facts of which are largely undisputed. At the hearing before the Referee, petitioner admitted that he had at least one ex parte conversation with the prospective litigant concerning the substance of the water diversion claim and that, in the course of that discussion, he made statements suggesting that the litigant's claim lacked merit. Such conduct is antithetical to the role of a judge, which is evident from the Rules Governing Judicial Conduct, which declare that "[a] judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties or their lawyers concerning a pending or impending proceeding" (22 NYCRR 100.3 [B] [6]). Before the litigant even had an opportunity to initiate a claim and prior to any party advancing a legal argument, petitioner expressed his views concerning the outcome of the proceeding, thereby discouraging the litigant from pursuing relief.

Petitioner attempted to justify his conduct at the hearing by indicating that he never intended to preside over the case and simply questioned the litigant to determine whether the dispute involved a matter appropriately pursued in small claims court. But petitioner did not advise the litigant that he planned to recuse himself and, even if he had, it would still have been inappropriate for him to gratuitously offer his opinion concerning the merits of an impending claim. Indeed, petitioner's comments temporarily resulted in the litigant abandoning the claim.

---

appearance of any impropriety." If there had been nothing more than an arm's length employer-employee relationship that ended more than a decade before, petitioner would have been right. But assuming this was his justification at the time, petitioner failed to account for his continuing contacts with Johnson and his family. He and Johnson remained friendly after Johnson sold the business to his sons and they were colleagues during petitioner's second period of employment with the company since Johnson stayed on as a paid consultant (petitioner's employment with the company ceased the day before the court appearance). The record amply demonstrates petitioner's social and professional ties to Johnson and his family, which can fairly be characterized as ongoing when petitioner presided over the traffic matter.

Although the litigant came to the courthouse seeking adjudication of a dispute by a neutral and unbiased magistrate, petitioner responded by advocating the position of the prospective opponent, a "local" petitioner had known for decades. Whether accurate or not, the litigant reasonably came away with the impression that petitioner was biased against his position and that he could not receive fair consideration of his claim in the Middletown Town Court.

When assessing the appropriate sanction in a judicial misconduct case, we consider not only the number and nature of the transgressions but also the length of a judge's public service. Here, we are mindful of the fact that petitioner has served his community for nearly three decades. Nonetheless, although the dissent apparently feels otherwise, the two independent charges involve serious misconduct relating directly to petitioner's fulfillment of his judicial duties. And the first charge is significantly aggravated by petitioner's failure to heed a prior warning from the Commission. Hypertechnical arguments—such as the view that petitioner had no duty to recuse himself or disclose the relationship because Johnson sold the company to his sons in 1997 or because the Commission did not specifically direct petitioner to recuse himself in future cases involving the Johnson family—fail to appreciate a judge's continuing obligation to avoid even the appearance of impropriety. Under the circumstances, despite petitioner's long tenure on the bench and commendable record as a State Trooper, we concur with the Commission that removal is the appropriate sanction.

Accordingly, the determined sanction of removal should be accepted, without costs.

PIGOTT, J. (dissenting). The misconduct of which Judge George is accused does not warrant the sanction of removal from office. "Removal is an extreme sanction and should be imposed only in the event of truly egregious circumstances. Indeed, we have indicated that removal should not be ordered for conduct that amounts simply to poor judgment, or even extremely poor judgment" (*Matter of Cunningham*, 57 NY2d 270, 275 [1982] [citations omitted]).

Here, there is no allegation of any legal error made by Judge George in dismissing the summons in question. No one disputes that the ticket issued to Lynn Johnson for a seat belt violation[1]

---

1. A violation of Vehicle and Traffic Law § 1229-c (3) is considered an "equipment violation" and attaches no points to a defendant's license.

was defective for describing the wrong vehicle. Nor is there any allegation that the dismissal itself proves, or even suggests, favoritism by Judge George, who by all accounts was "a stickler for errors" on tickets. And there is no suggestion that Johnson appeared in Judge George's court because they knew each other, or that Johnson was even aware that Judge George would be presiding. He appeared at the specific time and date on which his matter was "scheduled to be handled," bearing a ticket stating that "failure to respond" could result in a default judgment.

Instead, the majority and the Commission on Judicial Conduct believe that Judge George committed misconduct simply by presiding over this routine matter at all. On its own, as the majority admits, Judge George's failure to recuse himself from the Lynn Johnson matter could be regarded as a "lapse in judgment," which would not warrant removal from the bench (majority op at 329). The sole aggravating factor that the majority can dredge up from the record, to justify the sanction of removal, is that Judge George had previously been warned about hearing cases involving the Johnson family. Judge George had offered to counsel a member of that family, who was a defendant in his court, about alcohol abuse issues. At that time, nine years before, Judge George had been privately advised that he "should have considered whether presiding over . . . cases [involving Johnson's family] gave the appearance that [he] could not be impartial."

However, significantly, the Commission, on the previous occasion, dismissed proceedings against Judge George without making a determination of misconduct. Moreover, Judge George was not told that he could not preside over any future matter involving the Johnson family; the warning was expressed in the past tense, and in a tone of mild reproof. Perhaps the Commission appropriately realized at that time that in a town of approximately 3,800 people, it is inevitable that the Town Justice would be familiar to all of its citizens and an integral part of the community.

The majority inaccurately characterizes Judge George as saying at his Commission hearing that he had presided over Johnson's case "without even considering recusing himself" (majority op at 329). The record indicates that Judge George implied in his testimony that he did consider recusal, but decided that the appearance of impropriety had diminished, so that recusal was not necessary. "I felt," he testified, "that a

ten-plus year separation from employer-employee relation was more than sufficient to avoid the appearance of any impropriety."[2]

In these circumstances, I do not believe that the private caution, issued several years before, can be used to elevate Judge George's "lapse in judgment" to "truly egregious" conduct warranting removal.

Nor do I think that Judge George's casual conversation with a litigant concerning the merits of a water diversion claim that Judge George never intended to preside over even comes close to conduct that warrants removal, however ill-judged it may have been. The majority seems to agree, because it describes this conversation merely as "compound[ing]" its concerns about Judge George's behavior (majority op at 330). Giving well-intentioned advice to litigants ex parte is inappropriate judicial conduct but it is not in itself ground for removal.

My strongest disagreement with the majority is that it gives no serious consideration to the question whether a lesser sanction than removal is appropriate. Although there is not the slightest suggestion that Judge George's "continued performance in judicial office presently threatens the proper administration of justice or that he has irredeemably damaged public confidence in his own impartiality or that of the state judiciary as a whole" (*Matter of Watson*, 100 NY2d 290, 304 [2003]), the majority blindly follows the Commission's determination that removal is appropriate, on the basis that "serious misconduct" is involved (majority op at 331).

However, even "[c]oncluding that petitioner committed serious misconduct does not . . . end our inquiry. We also must determine whether the misconduct warranted the extreme sanction of removal" (*Matter of Skinner*, 91 NY2d 142, 144 [1997]). Here, as in *Matter of Skinner*, "[s]everal factors . . . suggest that the sanction of removal is unduly severe. First, petitioner, now in his seventies, has for . . . decades been the elected choice of the voters to hold the office of Town Justice . . . . Second, there is no indication that petitioner was motivated by personal profit, vindictiveness or ill will" (91 NY2d at 144 [citations omitted]). Put another way, Judge George "was not motivated by personal gain, and totally absent from his conduct was any

---

**2.** According to the Commission's determination, Judge George worked at Johnson's drilling company from 1982 to 1990 and from 1999 to 2009. Johnson sold his business to his sons in 1997. It follows that Johnson had not been Judge George's employer since 1990, almost 20 years before the proceeding at issue here.

element of venality, selfish or dishonorable purpose" (*Matter of Kiley*, 74 NY2d 364, 370 [1989]). Finally, Judge George has never been accused of any deception or cover-up of his actions. Indeed, the proceeding involving Johnson was recorded, both via audiotape and in written form, and the evidence showing that the ticket was defective was placed in the court's files. Given all of these mitigating circumstances, Judge George's conduct should not result in removal from office (*see Skinner*, 91 NY2d at 144).

While I accept that removal may sometimes be "appropriate when the circumstances indicate a lack of judicial temperament, even in the absence of proof of venal motives" (*Matter of Cohen [State Commn. on Jud. Conduct]*, 74 NY2d 272, 278 [1989]), this is not such a case. In *Cohen*, "a Judge, for a number of years, . . . acted as if his decisions could be influenced by personal gain, [so that] removal of the individual [was] necessary to remove the stain from the judiciary" (*id.*). The majority does not suggest that this case is remotely similar.

Following 20 years of distinguished service as a New York State trooper and now 28 years as a town justice (48 years of public service in all), and after having been repeatedly reelected by the citizens of Middletown, Judge George will be removed from the bench, in the very month in which he was to retire, because of a churlish and overreaching decision of the Judicial Conduct Commission, which, regrettably, the Court endorses. I would reject the Commission's sanction of removal and impose instead the sanction of admonition.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, RIVERA and ABDUS-SALAAM concur; Judge PIGOTT dissents and votes to impose the sanction of admonition in an opinion.

Determined sanction accepted, without costs, and Glen R. George removed from the office of Justice of the Middletown Town Court, Delaware County.