================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 103
In the Matter of the Hon. J.
Marshall Ayres, a Justice of the
Conklin Town Court, Broome
County.

Hon. J. Marshall Ayres,
            Petitioner,
New York State Commission on
Judicial Conduct,
            Respondent.

             J. Marshall Ayres, petitioner pro se.
             Edward Lindner, for respondent.

PER CURIAM:

        Petitioner J. Marshall Ayres, a non-lawyer Justice of

the Conklin Town Court, Broome County, since 2009, commenced this

proceeding, pursuant to article VI, § 22 of the New York State

Constitution and § 44 of the Judiciary Law, to review a

determination of the New York State Commission on Judicial

- 1 -

Conduct (Commission) sustaining charges of misconduct and removing him from office.  Upon our plenary review of the record we sustain the Commission's findings and conclude that removal is warranted.

The Commission issued a Formal Written Complaint containing two charges.  The first alleged that petitioner lent the prestige of his judicial office to advance the private interests of his daughter by attempting to influence the disposition of a traffic ticket issued to her and, in the process, was discourteous to the prosecutor on the case.  According to the evidence before the Commission, petitioner relied on his status as a judge to personally request from a court clerk and another Town Justice that his daughter's case be transferred from the assigned judge.  The clerk did not comply with the request, and the Town Justice refused, and further rebuffed petitioner's attempts to discuss the merits of his daughter's case.  Subsequently, petitioner attended his daughter's pre-trial conference with the prosecutor and made inappropriate reference to his judicial office, telling the prosecutor that "if this ticket was in my courtroom, I'd dismiss it," and that other judges he spoke with shared his view "that this should be dismissed."  The prosecutor testified that she felt "extreme pressure" to dismiss the ticket.  After the conference, the prosecution moved to dismiss the ticket and the

court eventually granted the motion.[1]

The second charge alleged that, in connection with appeals from petitioner's restitution orders in <u>People v Finch</u> (Conklin Town Court, Case No. 10020071), petitioner mailed to Broome County Court eight letters, including five *ex parte*, that contained argumentative and biased statements. In these letters, petitioner asserted that the appeal was meritless and that defense counsel's arguments were "ludicrous" and "totally beyond any rational thought process." Petitioner also made biased, discourteous, and undignified statements about the defendant and defense counsel, including suggesting that defense counsel was attempting to "pad [his] bill" at taxpayer expense. Petitioner himself concedes that at least one letter addressed County Court with "snarky" language.

County Court took the unusual step of responding to petitioner with a letter in which it explained why his arguments were misplaced, his conduct inappropriate, and his words and actions ill-suited to his judicial post. Even after receiving this correspondence, petitioner continued to send letters to County Court opining on the merits of the case and failed to timely comply with deadlines for filing returns in the <u>Finch</u> appeals.

---

[1] In fact, the Judge on the case initially refused to accept the prosecutor's motion to dismiss, since, as he testified at the Commission hearing, he was worried that petitioner had exerted inappropriate influence during the pre-trial conference.

The Commission unanimously concluded that petitioner's actions violated sections 100.1, 100.2 [A], 100.2 [B], 100.2 [C], 100.3 [B] [4], and 100.3 [B] [6] of the Rules Governing Judicial Conduct. As aggravating factors supporting removal the Commission noted petitioner's insistence that his actions were permissible as well as his persistent misconduct in the Finch appeals.[2]

The Commission properly identified the applicable judicial standards of ethics.[3] As we stated in Matter of Esworthy

_____

[2] While two commissioners wrote separately, both agreed that petitioner committed misconduct and that removal from judicial office was warranted.

[3] We reject as without merit petitioner's varied objections to the Commission's process. Contrary to his claims, the Commission did not employ improper investigative techniques or demand documents outside the scope of its authority, but instead acted well within its broad powers to request and review records (see Matter of New York State Commn. On Jud. Conduct v Rubenstein, 23 NY3d 570 [2014]). We similarly find nothing inappropriate in the Commission Deputy Administrator participating at petitioner's hearing, or the Commission referee advising petitioner of the possible negative inference to be drawn from petitioner's failure to testify. Petitioner's argument that he cannot be subject to the Commission's scrutiny because he relied on the Office of Court Administration and the Town and Village Courts Resource Center is unpersuasive because the Resource Center made clear that a judge may not use a judicial position to obtain special favors or outcomes, even if attending a court appearance as a parent. In any case, as the record establishes, petitioner did not seek help from the Resource Center with respect to the charges at issue here, even after he had been put on notice that he was acting inappropriately. Lastly, the Commission's Formal Written Complaint provided petitioner with adequate notice about the disconcerting tone of his letters which the Complaint described as containing "biased, discourteous and undignified statements

(77 NY2d 280, 282 [1991]), a judge has a duty to act "in such a manner as to inspire public confidence in the integrity, fair-mindedness and impartiality of the judiciary."  The Rules Governing Judicial Conduct expressly provide that a judge must "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary" and "avoid . . . [even] the appearance of impropriety" (22 NYCRR 100.2, 100.2 [A]).  In particular, a judge shall not "lend the prestige of judicial office to advance the private interests of . . . others" (22 NYCRR 100.2 [C]).  As the Court has emphasized, "[f]ew principles are more fundamental to the integrity, fair-mindedness and impartiality of the judiciary than the requirement that judges not preside over or otherwise intervene in judicial matters involving relatives . . . .  The same is true of intervention by a judge in proceedings involving family members pending in another court . . ." (Matter of LaBombard, 11 NY3d 294, 297 [2008]).

Similarly, it is a violation of a judge's solemn oath to abandon the role of neutral decisionmaker or engage in *ex parte* communications on the merits of a case.  As we have explained, both actions are fundamentally incompatible with the responsibilities of judicial office (see Matter of Blackburne, 7 NY3d 213, 221 [2006] [observing that, when "petitioner abandoned her role as a neutral arbiter," she acted in a way "completely

about the defendant and his counsel."

incompatible with the proper role of an impartial judge"]; <u>Matter of George</u>, 22 NY3d 323, 330 [2013] [observing that engaging in *ex parte* communications about the merits of a case is "conduct . . . antithetical to the role of a judge"]).  For this reason, the Rules Governing Judicial Conduct state unequivocally that "[a] judge shall not initiate . . . *ex parte* communications" (22 NYCRR 100.3 [B] [6]), and we have repeatedly stressed that any conduct that creates or suggests the appearance of partiality is a "misuse of [the] judicial office" (<u>Matter of Young</u>, 19 NY3d 621, 626 [2012]).  "[A] judge performing judicial duties must both act and appear to act as an impartial arbiter serving the public interest . . . . A judge who does not know this, and is not capable of learning it, should not be on the bench" (<u>Matter of Cerbone</u>, 2 NY3d 479, 485 [2004]).

As to the proper disposition for judicial misconduct, "[r]emoval is an extreme sanction and should be imposed only in the event of truly egregious circumstances" (<u>Matter of Cunningham</u>, 57 NY2d 270, 275 [1982]), and "should not be ordered for conduct that amounts simply to poor judgment, or even extremely poor judgment"  (<u>id.</u>; <u>see also</u> <u>Matter of Kiley</u>, 74 NY2d 364, 369, 370 [1989]).  Whether a judge's behavior crosses the line of what constitutes "truly egregious" conduct is a fact-specific inquiry because "[j]udicial misconduct cases are, by their nature, sui generis" (<u>Matter of Blackburne</u>, 7 NY3d at 219-220 [2006]).  A guiding principle in our assessment is that

"the 'truly egregious' standard is measured with due regard to
the higher standard of conduct to which judges are held" (Matter
of Restaino, 10 NY3d 577, 590 [2008] [internal quotation marks
and citations omitted]).  When a judge intervenes in another
judge's courtroom, it compromises the court system as a whole.
Thus, "as a general rule, intervention in a proceeding in another
court should result in removal" (Matter of Edwards, 67 NY2d at
155).  The inability to recognize the seriousness of one's
misconduct and the failure to heed a prior warning are
significant aggravating factors, and can be grounds for removal
as well (see Matter of George, 22 NY3d 323, 331 [2013] [failure
to heed a prior warning as a ground for removal]; Matter of Hart,
7 NY3d 1, 7-8 [2006] [failure to recognize the seriousness of
misconduct as a ground for removal]; Matter of Robert, 89 NY2d
745, 747 [1997] [same]).

Here, it was improper and a violation of petitioner's
ethical duty for him to use his judicial position to interfere in
the disposition of his daughter's traffic ticket.  It was further
improper for petitioner to tell the prosecutor that in his
opinion and that of his colleagues the matter should be
dismissed.  By these actions petitioner did more than act as
would any concerned parent, as he now maintains.  Instead, he
used his status to gain access to court personnel under
circumstances not available to the general public, and, in his
effort to persuade the prosecutor to drop the matter, gave his

unsolicited judicial opinion.  Furthermore, petitioner's imperious and discourteous manner towards the prosecutor on the case undermined "the integrity . . . of the judiciary."  Even during the course of the Commission's proceedings petitioner exhibited no insight into the impropriety of his conduct.  For example, he used paternalistic and infantalizing terms, referring to the prosecutor as "girl" and "kid," colloquialisms that were disrespectful and inappropriate.

Petitioner's actions during the Finch appeals, including his several *ex parte* communications to County Court advocating for dismissal of the matter and extolling the correctness of his decisionmaking, were also highly improper (see e.g. In re Murchison, 349 US 133, 137 [1955] [noting that a judge should not have "the zeal of a prosecutor"]; Matter of Gumo, 2015 NYSCJC Annual Report 98; NY Jud. Adv. Op. 98-77 ["[A] judge should not adopt the role of an advocate."]; 22 NYCRR 100.3 [B] [6] [prohibiting *ex parte* communications]).  Additionally, the letters disparaged County Court, defendant, and defense counsel, which was also unacceptable (see 22 NYCRR 100.3 [B] [4] ["A judge shall perform judicial duties without bias or prejudice against or in favor of any person."]).  He persisted in this serious misconduct even after County Court informed petitioner that his comments were "troubling" and further instructed him as to the appellate process and petitioner's proper role.

Petitioner's misconduct is compounded by his failure to

recognize these breaches of our ethical standards and the public trust.  Before the Commission's referee, the Commission itself, and this Court he continued to minimize the import of his actions.  Rather than acknowledge his obligations and the implications of his conduct, petitioner asserts that he should not be removed because he acted as a father in his daughter's case, not as a judge, and because his communications in the Finch appeals were in good faith and substantially correct.  He focuses on what he perceives as a misunderstanding, stating that "[t]his experience has taught [him] how easily words and actions can be misinterpreted and to avoid any occasion or situation that could be misconstrued."  Petitioner fails to accept that this is not a question of a misunderstanding.  As a judge he had but one choice: to refrain from "lend[ing] the prestige of judicial office to advance the private interests of . . . others" (22 NYCRR 100.2 [C]), which included any communication on behalf of his daughter which could be "perceived as one backed by the power and prestige of judicial office" (Matter of Lonschein, 50 NY2d 569, 572 [1980]), such as his opinion that the ticket should be dismissed.  Judges are held to "standards of conduct more stringent than those acceptable for others" (Matter of Kuehnel, 49 NY2d 465, 469 [1980]), and "'paternal instincts' do not justify a departure from the standards expected of the judiciary" (Matter of Edwards, 67 NY2D at 155, citing Matter of Lonschein, 50 NY2D at 572).

Petitioner similarly fails to appreciate that he acted inappropriately during the course of the Finch appeals.  He continues to minimize the import of his actions, claiming that the Commission took his comments out of context and that judges must be allowed "to express their individuality."  Petitioner misses the essential point: that, as a judge, his conduct had to both be and appear to be impartial.  This is a particularly high standard (see Matter of Restaino, 10 NY3d at 590; Matter of Kuehnel, 49 NY2d at 469).  The conduct with which he is charged -- and which he does not deny -- fails to meet it.

His response to the charges and the Commission's findings, his continued assertion that he acted lawfully, and his failure to appreciate his ethical breaches "strongly suggest[] that, if [petitioner] is allowed to continue on the bench, we may expect more of the same" (Matter of Bauer, 3 NY3d 158, 165 [2005]).  Accordingly, the determined sanction of removal should be accepted, without costs, and J. Marshall Ayres removed from the office of Justice of the Conklin Town Court, Broome County.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Determined sanction accepted, without costs, and J. Marshall Ayres is removed from the office of Justice of the Conklin Town Court, Broome County.  Opinion Per Curiam.  Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Garcia, Wilson and Feinman concur.

Decided October 17, 2017