OPINION OF THE COURT
Per Curiam.
Petitioner commenced this proceeding to review a determination of the Commission on Judicial Conduct that he be removed from his judicial office for ordering that settlements awarded to infants, totaling nearly a quarter of a million dollars, be deposited in a credit union where he was receiving favorable treatment on personal loans, resulting in a benefit to him of at least $15,000. He contends that one of the two charges sustained by the Commission is not supported by the record and that removal is an unduly harsh sanction. After reviewing the record we have concluded that the evidence supports the Commission’s findings with respect to the charges and its determination that petitioner be removed.
In 1979, petitioner was elected as a Civil Court Judge in the City of New York. He served in that position from January 1, 1980 to December 31, 1984. In 1984 he was elected to the Supreme Court and has served as a Justice of that court since January 1, 1985. As a Civil Court Judge, petitioner approved settlements involving infants and specified the place where the funds were to be deposited until the infant reached adulthood. In numerous cases during his term as a Civil Court Judge petitioner ordered that settlements recovered by infants be deposited in the HYFIN Credit Union where petitioner had obtained several personal loans.
In 1987 the Commission on Judicial Conduct served petitioner with a complaint charging him with misconduct in connection with the HYFIN transactions. The complaint alleges that he obtained substantial loans from HYFIN at favorable rates not available to other borrowers; that all payments on the loans were, in fact, credited to the principal; that he knew he was receiving interest-free loans and that his orders, directing that infants’ funds be deposited in HYFIN, were made pursuant to an "understanding” with the credit union that he would thereby continue to receive favorable treatment on his loans or, at least, created the appearance that such an understanding existed.
*275 At a hearing held before a Referee, the Commission submitted documentary evidence that the petitioner obtained the following loans from HYFIN:
Date Amount Interest Rate July 1979 $ 5,000 12% August 1979 15,000 12% August 1979 25,000 12% November 1981 17,000 12% January 1983 18,000 6% April 1984 15,000 6% February 1985 50,000 10% February 1985 25,000 10%
In each instance the current loan, or a subsequent one, was used to "refinance” existing loans by paying off the outstanding principal. In 1979 all payments were credited to both interest and principal. However, from the day petitioner became a Judge on January 1, 1980 until September 30, 1985, all payments were credited to principal alone. It is conceded that this saved petitioner $14,889.50 in "waived interest”, beyond the lower interest rates granted to him in the loan agreements.
There was also uncontradicted documentary evidence that from February 1980, his second month in office, through May of 1984, petitioner, as a Civil Court Judge, ordered in 56 cases that settlements awarded to infants be deposited in the HY-FIN Credit Union and that the total amount deposited pursuant to these orders was $244,503.14. Edmund Lee, the former treasurer and chief executive of HYFIN, testified that he had an understanding with the petitioner that HYFIN would waive interest payments on the loans if petitioner designated HYFIN as the depository for infants’ settlements. Lee also admitted that he had been charged with Federal offenses as a result of his actions at HYFIN, had reached an agreement with Federal prosecutors and had pleaded guilty to certain crimes but had not yet been sentenced.
Petitioner testified at the hearing and denied that there was an understanding between him and Lee with respect to the loans and the infants’ deposits. Although he conceded that he knew that the interest rates he was offered were lower than those available to other borrowers, he stated that he believed Lee was doing this for him because they were friends and considered petitioner a "good customer”. He also testified that he believed that the payments he made were being credited to *276 interest and principal and had no knowledge of the fact that he was receiving not only less-than-market interest but also interest-free loans.
The Referee reported that the charge alleging an “understanding” (charge 1) had not been established but recommended that the other charges be sustained. He stated that he had found that petitioner had obtained loans at rates not available to other borrowers (charge 3) and that all payments on the loans were credited to principal and that petitioner knew he was receiving interest-free loans (charge 2).
A majority of the Commission confirmed the report and determined that the petitioner should be removed from his judicial office. The decision notes that by ordering that infants’ funds be deposited in the institution where he was receiving such favorable treatment on his personal loans, petitioner created the impression that his actions as a Judge were influenced by personal monetary concerns and that this called into question his own integrity and the integrity of the judiciary. All of the members agreed that the last two charges had been sustained. Four members would have gone further and sustained the first charge, that the petitioner acted pursuant to an understanding with the credit union. Only one member felt that removal was unwarranted and voted for a censure.
In seeking review by this court, petitioner initially concedes that charge 3 was properly sustained. There is ample evidence in the record that the petitioner knowingly obtained loans at favorable rates not available to other borrowers in violation of the express provisions of section 100.5 (c) (3) of the Rules Governing Judicial Conduct (22 NYCRR). He also concedes, with respect to charge 2, that all payments were credited to principal during the relevant period, but claims that he did not know he was receiving interest-free loans and urges that the Commission’s contrary finding is not supported by a preponderance of the evidence.
The record shows that petitioner sent all loan payments to Mr. Lee marked “personal and confidential.” Lee’s intervention was necessary to override the computer which would otherwise automatically credit a payment to both principal and interest. When, on occasion, a payment was credited to interest in whole or in part, it was later “corrected” to reflect a payment to principal alone. Sometimes this was done after petitioner complained, often in writing, that the balance on *277 his statement was inaccurate. On his Federal income tax return, petitioner accurately claimed interest deductions for 1979 and 1985 when he actually did pay interest to HYFIN, but not for 1980 through 1984, when interest payments were waived.
Petitioner contends, as he did before the Referee and the Commission, that he did not understand that the balance on his statement reflected only the outstanding principal. He concedes that the breakdown of interest and principal was recorded in his passbook but claims that HYFIN kept the passbook in 1980 and never sent it back to him. With respect to the accuracy of his income tax deductions for interest, he contends that was purely fortuitous. In 1979 he prepared his own return and was able to compute the interest from the passbook. In 1980 the passbook was lost, the credit union sent no statements regarding interest and petitioner had his returns prepared by an accountant who was not familiar with the HYFIN loans. In 1985 he employed a different accountant, and received a more informative statement from the credit union.
The Referee and the Commission found these excuses unconvincing, as do we. We also agree with the Commission that removal is the appropriate sanction.
There is no question that petitioner violated the rule which expressly prohibits a Judge from accepting loans at rates not available to others (22 NYCRR 100.5 [c] [3]). But contrary to petitioner’s argument, this is not his only dereliction. Here he not only received preferential treatment on interest, but received interest-free loans. He did this over and over again for almost five years, lining his pockets with $15,000 of "waived” interest and more considering the initial benefit of the lower rates, and then incredibly claimed, as he still does, that he was completely ignorant at the time that he was obtaining this windfall. As the Commission held, this clearly created the impression that he was exploiting his judicial office for personal benefit in violation of ethical canons (22 NYCRR 100.5 [c] [1]; 100.2). When, in addition, he used his office as a Judge to confer a benefit on the credit union, by directing that nearly a quarter of a million dollars in infants’ funds be deposited there, he created the further, and far more damaging impression, that his judicial decisions were influenced by personal profit motives in violation of the most basic ethical standards (Matter of Sims, 61 NY2d 349). These ap *278 pearances could only be reinforced by the fact that the interest-free loans first became available to the petitioner after he became a Judge.
Removal of a Judge is a drastic sanction which should only be employed in the most egregious circumstances (Matter of Steinberg, 51 NY2d 74). In cases involving the appearance of impropriety it is rarely warranted, although it may be appropriate when the circumstances indicate a lack of judicial temperament, even in the absence of proof of venal motives (Matter of Shilling, 51 NY2d 397). Impartiality and integrity are among the most essential attributes for members of the judiciary. When as here a Judge, for a number of years, has acted as if his decisions could be influenced by personal gain, removal of the individual may be necessary to remove the stain from the judiciary. In this case the Commission noted, and we agree, "[s]uch an appearance diminishes public confidence in the integrity of the judiciary and destroys [petitioner’s] usefulness on the bench”.
Accordingly, the determination of the Commission should be accepted, and the petitioner should be removed from his judicial office.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur in Per Curiam opinion.
Determined sanction accepted, without costs, and Honorable Jerome D. Cohen removed from his office of Justice of the Supreme Court, Second Judicial District.