[849 NE2d 946, 816 NYS2d 723]

In the Matter of DUANE A. HART, a Justice of the Supreme Court, Queens County, Petitioner. STATE COMMISSION ON JUDICIAL CONDUCT, Respondent.

Argued March 28, 2006; decided May 4, 2006

**POINTS OF COUNSEL**

*Herzfeld & Rubin, P.C.,* New York City (*Herbert Rubin* and *Lawton W. Squires* of counsel), for petitioner. I. The State Commission on Judicial Conduct's determination is in conflict with the Appellate Division decision. (*Matter of Embser,* 90 NY2d 711.) II. The facts support the declaration of summary contempt. (*People v Higgins,* 173 Misc 96; *Matter of Mangiatordi v Hyman,* 106 AD2d 576.) III. The State Commission on Judicial Conduct erred in its determination that there had been a violation of the rights of counsel to "assert their client's interests." (*Matter of Katz v Murtagh,* 28 NY2d 234.) IV. The State Commission on Judicial Conduct failed to consider the difference between the declaration of the contempt and punishment for the contempt. (*People v Eldridge,* 8 AD3d 294; *IBE Trade Corp. v Litvinenko,* 288 AD2d 125.) V. Respondent respectfully submits that censure is an excessively harsh sanction.

*Robert H. Tembeckjian,* New York City, and *Vickie Ma* for respondent. I. Petitioner abused his judicial power in declaring summary contempt against a litigant out of pique toward his lawyer. (*Matter of Feinberg,* 5 NY3d 206; *Matter of Katz v Murtagh,* 28 NY2d 234; *Matter of Rodriguez v Feinberg,* 40 NY2d 994; *Matter of O'Connell v Taddeo,* 174 Misc 2d 110; *Matter of Loeber v Teresi,* 256 AD2d 747; *Matter of Cohen [State Commn. on Jud. Conduct],* 74 NY2d 272; *Matter of Cerbone,* 61 NY2d 93.) II. The appropriate sanction is censure. (*Matter of Hamel [State Commn. on Jud. Conduct],* 88 NY2d 317; *Matter of Aldrich v State Commn. on Jud. Conduct,* 58 NY2d 279.)

### OPINION OF THE COURT

Per Curiam.

Respondent Duane A. Hart, a Justice of the Supreme Court of the State of New York, Queens County, brings this proceeding to review a determination of the Commission on Judicial Conduct imposing a sanction of censure. We accept the Commission's determination.

The instant matter began with a formal written complaint by the Commission containing two charges. The second charge—that Judge Hart wrongly held in contempt a litigant whose attorney made a record of an out-of-court encounter between the Judge and the litigant—is the subject of this proceeding. A Referee designated by the Commission held a hearing on the underlying facts. Testimony revealed that the matter of *Modica v Modica,* a constructive trust and unjust enrichment suit by John Modica (Modica) against his father, Salvatore, was assigned to Judge Hart for trial. After unsuccessful efforts to settle the matter, Judge Hart three times declared mistrials. Prior to the third, Modica's attorneys had complained to the Administrative Judge that Judge Hart was delaying the case; subsequently they moved to recuse him on the ground that he had predetermined the case.

Judge Hart held the recusal motion in abeyance after the third mistrial and directed the parties to be ready for trial on April 21, 2003. While Modica was on the stand, the Judge declared shortly before 1:00 P.M. that because of a personal matter, court would recess for the day. Modica then requested an additional day's adjournment so that he could attend his son's

championship soccer game but Judge Hart denied the request and told the parties to be in court the next day.[1]

After leaving the courthouse, Modica saw the Judge in the judges' parking lot and approached him intending to revisit the request for the adjournment. The litigant said, "Excuse me, Your Honor" and Judge Hart called out to a court officer to secure Modica. The officer walked over, called her supervisor, Lieutenant Lawrence Sullivan, and escorted Modica to the nearby security booth. Lieutenant Sullivan soon arrived and spoke with Judge Hart, who directed him to let Modica go with a warning. Lieutenant Sullivan did so, and then wrote an Unusual Occurrence Report, which stated in part:

> "Modica stated he was passing by and saw Judge Hart and thought he could ask for an adjournment of his case due to the unavailability of his son. He was advised by myself not to approach any judge at any time. He agreed and Judge Hart requested that we disregard the matter."

The next morning Modica appeared in court and reported the incident to his attorneys. When Judge Hart took the bench (the court reporter was not yet present) he appeared angry and upset, stating that Modica had "accosted" him in the parking lot and he was considering holding Modica in contempt. The Judge noted that he could put Modica in jail without a hearing for 30 days, or after a hearing for six months or a year. Lieutenant Sullivan was brought into the courtroom to make a statement, and explained that he gave Modica a "very harsh" warning, that Modica was cooperative and no further action was taken. Based on the officer's statement and his own feelings at that point, the Judge concluded he would not hold Modica in contempt.

Next, counsel for Modica asked to make a record of the incident and the Judge replied that if counsel placed the matter on the record, he would hold Modica in contempt. Modica and counsel conferred and counsel again insisted that he wished to make a record. Judge Hart demanded that Modica admit that the encounter was intentional, but counsel claimed that it was coincidental. The Judge stated, "[i]f you insist upon making that record, I've got to take some remedial action, so that I and the other judges aren't bothered by Mr. Modica."

---

1. The Judge later told the Commission that if Modica's attorneys hadn't complained to the Administrative Judge, "I'd have let [Modica] see the soccer match. I didn't care. It was a non-jury trial. . . . I had other things to do."

Counsel placed on the record (the court reporter had since arrived) Modica's account of the incident, and the Judge declared Modica in contempt:

"I find your client in contempt. He tried to intimidate the Court. I sentenced him to 30 days. I will suspend sentence pending the outcome of this trial. If I hear so much as a muttering from him, if I think that he's making a face at me, if I think he's doing anything, he shall be remanded by Officer Battle forthwith, and he shall spend every bit of 30 days as a guest of the City of New York. I find that his act in accosting me in the parking lot was contumacious conduct, if there ever was contumacious conduct. He was not supposed to do it. Let the record show I tried to let it go with a warning, but you and your associate decided to put it on the record, and I told you if you wanted to keep the matter going, fine. I will hold him in contempt and therefore I did."

Modica then took the stand to resume his testimony, and when it ended that day, the Judge dismissed the lawsuit and vacated the contempt finding.[2]

The Referee concluded that the second charge had been sustained by a preponderance of the evidence. In August 2005 the Commission heard oral argument and issued its determination on October 20, 2005, concluding that the second charge had been sustained and that Judge Hart violated sections 100.1, 100.2 (A), and 100.3 (B) (1) and (3) of the Rules of Judicial Conduct (22 NYCRR), sections 700.5 (a) and (e), 701.2 (a) and (c), and 701.4 of the Rules of the Appellate Division, Second Department (22 NYCRR) and section 755 of the Judiciary Law. In overriding the milder sanction of admonition urged by its own Administrator, the Commission stated the following:

"We find respondent's misconduct particularly troubling notwithstanding that later that same day, at the conclusion of the trial, he corrected his injudi-.

---

**2.** Modica appealed from the dismissal. The Appellate Division, Second Department affirmed the judgment insofar as appealed from (15 AD3d 635 [2d Dept 2005]), concluding that there was no rational process by which the court could base a finding in favor of Modica, and that Modica's recusal motion failed to set forth proof of bias requiring Judge Hart to recuse himself. The Appellate Division also concluded that Modica's remaining contentions were without merit.

cious decision by vacating the contempt finding. Several factors have persuaded us that a severe sanction is appropriate in this case.

"First, respondent continues to insist that his actions were appropriate and, indeed, asserts that in similar circumstances he would do the same thing again. Such intransigence suggests that respondent still fails to recognize that the awesome contempt power should be exercised only with appropriate restraint and within the carefully mandated safeguards. A judge's 'fail[ure] to recognize the inappropriateness of his actions or attitudes' is a significant aggravating factor on the issue of sanctions.

"Second, we note with concern respondent's conflicting testimony as to certain matters . . . as well as his tendency to accuse others of misdeeds in order to justify his own misbehavior. Respondent's claim that he tried to prevent the attorney from making a record because he knew the attorney wanted to make a 'phony' record is entirely unsupported.

"In sum, we find that respondent's conduct constitutes a significant departure from the role of a judge, who is required to be the 'exemplar of dignity and impartiality' and to exercise the considerable powers of judicial office within the bounds of the law. We trust that respondent will learn from this episode and that, in light of this decision, he will modify his behavior appropriately" (citations omitted).

Pursuant to its authority under article VI, § 22 (a) of the New York Constitution and Judiciary Law § 44 (1), the Commission unanimously found a violation. Seven members imposed a sanction of censure; three concluded that the lesser sanction of admonition was appropriate. Judge Hart now brings this proceeding to review the Commission's determination.

### Discussion

We concur with the Commission's conclusion that Judge Hart acted in excess of his authority pursuant to Judiciary Law

§ 755, the summary contempt power.[3] As we explained in *Matter of Katz v Murtagh* (28 NY2d 234, 238 [1971]), the summary procedure is "so summary that the right and need for an evidentiary hearing, counsel, opportunity for adjournment, reference to another Judge, and the like, are not allowable because it would be entirely frustrative of the maintenance of order." The Judge's actions, however, in holding Modica in summary contempt for counsel's attempt to place the parking lot incident on the record, were seriously flawed (*see e.g. Matter of Hamel [State Commn. on Jud. Conduct]*, 88 NY2d 317 [1996] [judge failed to appreciate the egregiousness of misuse of the summary contempt power]). His exercise of summary contempt was a misuse of judicial power in these circumstances. Summary contempt should be employed where a court reasonably believes that prompt adjudication may aid in restoring order and decorum in the courtroom (*see Matter of Doyle v Aison*, 216 AD2d 634, 636 [3d Dept 1995]; *Samuelsen v Samuelsen*, 124 AD2d 650, 652 [2d Dept 1986]). It may not be employed retributively against a litigant because his attorney makes a record.

As section 701.2 (a) of the Rules of the Appellate Division, Second Department makes clear, moreover, the court's summary power to punish contempt in its immediate view shall be exercised only in two exceptional circumstances:

> "(1) Where the offending conduct disrupts or threatens to disrupt proceedings actually in progress; or

> "(2) where the offending conduct destroys or undermines or tends seriously to destroy or undermine the dignity and authority of the court in a manner and to the extent that it appears unlikely that the court will be able to continue to conduct its normal business in an appropriate way" (22 NYCRR 701.2 [a]).

---

3. That section states:
   "[w]here the offense is committed in the immediate view and presence of the court, or of the judge or referee, upon a trial or hearing, it may be punished summarily. For that purpose, an order must be made by the court, judge, or referee, stating the facts which constitute the offense and which bring the case within the provisions of this section, and plainly and specifically prescribing the punishment to be inflicted therefor. Such order is reviewable by a proceeding under article seventy-eight of the civil practice law and rules" (Judiciary Law § 755).

Modica's out-of-court approach of the Judge was admittedly intrusive.[4] It nevertheless had no effect on proceedings actually in progress, nor was there any possibility that it could undermine the dignity of the court to the extent that court business foundered. We thus concur with the Commission's determination that Judge Hart acted in excess of his authority under section 701.2 (a).[5]

The Commission further determined that the Judge violated subdivisions (a) and (e) of section 700.5 of the Rules of the Appellate Division, Second Department: the obligation (a) to be at all times dignified, courteous and considerate, and (e) to "suppress his personal predilections, control his temper and emotions, and otherwise avoid conduct on his part which tends to demean the proceedings or to undermine his authority in the courtroom" (22 NYCRR 700.5 [a], [e]).[6] The record shows that the Judge angrily took the bench the morning after the incident; his own words in issuing the contempt order speak volumes about his deportment and temper: "[i]f I hear so much as a muttering from him, if I think that he's making a face at me, if I think he's doing anything, he shall be remanded by Officer Battle forthwith, and he shall spend every bit of 30 days as a guest of the City of New York." We concur with the Commission that by this conduct the Judge violated these Rules.

Next, we turn to the appropriate sanction in this case. While unanimous as to the issue of violation, we divide as to whether censure or admonition is the appropriate remedy.

■ As we have repeatedly stated, members of the judiciary are held to higher standards of conduct than members of the

---

4. In the moment, the Judge took the correct course by summoning a court officer. Regrettably, the matter did not end there, but was revived the following morning by the Judge.

5. We further accept the Commission's determination that Judge Hart never told Modica on the record that a simple apology would have sufficed; nor did the Judge warn Modica or give him an opportunity to make a statement in his defense or in extenuation of his conduct, as required by sections 701.2 (c) and 701.4 of the Rules of the Appellate Division, Second Department (22 NYCRR 701.2 [c]; 701.4; *see also* 22 NYCRR 100.3 [B] [1] [requiring a judge to be faithful to the law and maintain professional competence in the law]).

6. Similarly, section 100.1 of the Rules of Judicial Conduct requires that a judge should enforce high standards of conduct and shall personally observe those standards; section 100.2 (A) requires that a judge shall act at all times in a manner that promotes public confidence in the integrity of the judiciary; and section 100.3 (B) (3) requires that a judge shall be patient, dignified and courteous (22 NYCRR 100.1, 100.2 [A]; 100.3 [B] [3]).

public, and the effects of a judge's conduct on public confidence in judicial temperament and character must be weighed. Applying these principles, we agree with the Commission that though the Judge's conduct did not rise to a level warranting removal (*see e.g. Matter of Cohen [State Commn. on Jud. Conduct]*, 74 NY2d 272, 276-278 [1989]; *Matter of Aldrich v State Commn. on Jud. Conduct*, 58 NY2d 279, 282-283 [1983]), it was unquestionably serious conduct deserving the weighty sanction of censure.

Censure has generally been employed when a judge's conduct is inconsistent with the role of judge or amounts to an abuse of judicial power. Recently, in *Matter of Mills*, the Commission imposed a sanction of censure, concluding that:

> "[t]he exercise of the enormous power of summary contempt requires strict compliance with statutory safeguards, including giving the accused an appropriate warning and the opportunity to desist from the supposedly contumacious conduct and preparing an order setting forth the basis for the ruling. Here, respondent not only wielded the power without reasonable basis, but failed to adhere to mandated procedures. Such conduct constitutes an abuse of the summary contempt power and warrants discipline" (2005 Ann Report of NY Commn on Jud Conduct 185, 191-192 [Dec. 6, 2004] [citations omitted]; *see also Matter of Teresi*, 2002 Ann Report of NY Commn on Jud Conduct 163 [Feb. 8, 2001] [judge censured for misuse of summary contempt power, bias against unrepresented litigant and aggressive, disparaging behavior to litigants and attorneys]; *Matter of Recant*, 2002 Ann Report of NY Commn on Jud Conduct 139, 144 [Nov. 19, 2001] [judge censured for "significant departure from the proper role of a judge" and misuse of summary contempt power]).

To be sure, some judges who have similarly misused the summary contempt power have received only an admonition. For example, in *Matter of Sharpe*, a judge held a veteran prosecutor in summary contempt and placed him in a detention area for prisoners because his witness was late to court, but quickly vacated the contempt order after the witness arrived. By the judge's own later admission to the Commission, however, the prosecutor "had engaged in no improper, discourteous or contumacious conduct" (1984 Ann Report of NY Commn on

Jud Conduct 134, 139 [June 6, 1983]). The Commission determined that the judge had engaged in a "gross abuse of power" and imposed a sanction of admonition (*id.*).

In *Matter of Feinman*, a judge detained a defendant (who was at liberty) for nearly two hours in handcuffs in the courtroom, because his beeper had sounded in court and, as a court officer reported to the judge, defendant had cursed at the court officer and the court out of the judge's earshot. The judge conceded to the Commission that he could not have reasonably concluded from his own observation that the defendant's behavior was disorderly, contemptuous or insolent. Thus, the Commission held that the judge, having not personally witnessed the alleged contempt, was required to give the defendant notice and a hearing before he could impose punishment. The Commission found the judge to be "cooperative and contrite" when confronted with his misuse of judicial power, and imposed a sanction of admonition (2000 Ann Report of NY Commn on Jud Conduct 105, 108 [Dec. 21, 1999]).

We agree with the Commission that what makes this case more deserving of censure, and less like the result in *Sharpe* and *Feinman*, are two troubling elements, in addition to abuse of the summary contempt power: first, Judge Hart's adamant assertion that no misconduct occurred and he would "[a]bsolutely" do the same thing a second time if the circumstances presented themselves; and second, his several instances of conflicting testimony as to certain matters as well as his tendency to accuse others of misdeeds in order to justify his own misbehavior (spelled out in the Commission decision).

As the Commission observed, Judge Hart has failed to this day "to recognize that the awesome contempt power should be exercised only with appropriate restraint and within the carefully mandated safeguards. A judge's 'fail[ure] to recognize the inappropriateness of his actions . . .' is a significant aggravating factor on the issue of sanctions" (quoting *Matter of Aldrich*, 58 NY2d at 283; *see also Matter of Bauer*, 3 NY3d 158, 162 [2004]).

Indeed, Judge Hart continues before us to insist that he has not misused his judicial authority, claiming that the facts support his declaration of summary contempt, and that the Commission erred both in determining that he violated the rights of counsel to assert Modica's interests and in failing to consider the difference between a declaration of contempt and punish-

ment for contempt. The final point of the Judge's brief maintains that at most, he should receive a private letter of caution because he has already sustained the sharp and stinging criticism of the Commission. In fact, other than immediately vacating the contempt order, he has in no way acknowledged wrongdoing, or shown insight into his conduct. A judge need not adopt a posture of obeisance before the Commission or this Court. A judge must, however, recognize wrongdoing in order to forestall the inevitable, unfortunate conclusion that, absent a harsher sanction, more of the same will ensue.[7]

Finally, addressing the concluding paragraph of the dissent, like the Commission—which imposed a sanction higher than that recommended by its own Administrator—we are satisfied that the additional elements, beyond the summary contempt order, distinguish this case from *Sharpe* and *Feinman* and support the imposition of a harsher sanction. There is no unevenness in the law here.

Accordingly, the Commission's determined sanction should be accepted.

G.B. SMITH, J. (dissenting). Because the sanction of censure under the circumstances of this case is at odds with cases in which more grievous conduct resulted in admonition and, further, comes nowhere near the conduct in other cases that resulted in censure, I dissent.

In *Matter of Sharpe*, the judge ordered an assistant district attorney to produce a witness in two minutes or he would be jailed. The witness did not appear and the assistant was put in jail for a period of between 15 and 45 minutes. The attorney was not given an opportunity to address the court before he was jailed. He was released only when the witness appeared (*see* 1984 Ann Report of NY Commn on Jud Conduct 134, 139 [June 6, 1983]). The judge in *Sharpe* then vacated the contempt ruling and expunged the record. The Commission determined that the judge had engaged in a "gross abuse of power" but issued a sanction of admonition. (*Id.*)

In *Matter of Feinman* (*see* 2000 Ann Report of NY Commn on Jud Conduct 105 [Dec. 21, 1999]), the judge detained a litigant

---

7. The dissent's assertion that Judge Hart would abide by a ruling of this Court to the contrary does not alter our view of his past conduct or the appropriate sanction: an experienced former prosecutor and seasoned Judge after but a moment's reflection should have realized that the contempt ruling, which he himself vacated, was wrong.

for one hour and 40 minutes in handcuffs, in his courtroom, without explaining the reason either to the detainee or to his attorneys. The detention occurred because the litigant's beeper sounded in court and because of comments that he allegedly made to a court officer. The detainee was not given any notice that his actions would result in detention, and was deprived of his liberty without any sound legal reason.

The judge released the detainee after lunch and did not hold him in summary contempt of court. The Commission found the judge to be "cooperative and contrite" when confronted with his misuse of judicial power. (*Id.* at 108.) The sanction in *Feinman* was admonition.

The disparity in the sanction given respondent here and the sanctions given to other judges, evident in the admonitions given in *Sharpe* and *Feinman*, is even more pronounced when the facts of this case are compared to facts in other cases where the sanction was censure. In *Matter of Recant* (2002 Ann Report of NY Commn on Jud Conduct 139 [Nov. 19, 2001]), Recant was censured for conduct that included engaging in an improper ex parte conversation with the supervisor of an assistant district attorney, misusing bail in three cases in order to attempt to coerce a guilty plea, holding two defendants in custody, at least one of them being placed in handcuffs, without complying with the procedure for summary contempt, refusing to hear an attorney on the record and excluding two attorneys from her courtroom without establishing on the record a justification for such action and without a summary contempt proceeding.

In *Matter of Teresi (I)* (2002 Ann Report of NY Commn on Jud Conduct 163 [Feb. 8, 2001]), Teresi was censured for conduct that included incarcerating two people, one for a day and one for a weekend, without a hearing, finding a litigant in contempt of court and ordering him to serve six months in jail without a written order for refusing to sign a deed (the litigant served 45 days before being released by another judge) and refusing to allow parties to make a record where the judge ordered a trial prior to the already scheduled date when the parties refused to settle.

In *Matter of Teresi (II)* (2005 Ann Report of NY Commn on Jud Conduct 216 [Dec. 17, 2004]), Teresi was again censured for holding an ex parte conversation in chambers, this time with a nun who was to be an expert witness in a drunk driving case before him, not telling the parties about the conversation and

denying defendant's request for an adjournment in order to obtain another expert witness after the nun withdrew as a witness.

Respondent, while not contrite, did vacate the finding of contempt without jailing or handcuffing the party. Further, his attorney was able to make a record of the parking lot incident. What is at issue is how the Judge handled the incident rather than the actual consequences of his actions. Based on the isolated incident and the fact that the Commission has previously held that misuse of summary contempt, on its own, can result in admonition, depending on the underlying facts, the sanction here should be admonition.

One of the concerns of the Commission is that the respondent stated that he would act in the same way in the future. He was not asked, however, whether he would persist in the view that he would do it again if this Court indicated that the wrong procedure was used in finding Modica in contempt or that, under the circumstances, summary contempt should not have been found. It is simply unrealistic to conclude that this former assistant district attorney, former Civil Court Judge and now Supreme Court Justice, with an unblemished record, would ignore a ruling of this Court.

This Court is not required to accept the sanction of the Commission and, in fact, has the power to reject both the factual determination and the sanction (see NY Const, art VI, § 22 [d] ["The court of appeals may impose a less or more severe sanction prescribed by this section than the one determined by the commission, or impose no sanction"]). Because of Commission precedents and because the summary contempt here was not carried forward, the sanction should be admonition.

Finally, while as noted by the majority, the foregoing cases were decided by the Commission on Judicial Conduct and not the Court of Appeals, it is the Court of Appeals that has the duty in this state to ensure that the law is applied in an evenhanded fashion. When the Commission admonishes a judge who jails a lawyer because he cannot produce a witness in two minutes and admonishes another judge who permits a person to remain handcuffed during a luncheon recess, but requires censure for this respondent, who found a person in contempt but vacated the contempt without further action, the law is being applied in an uneven fashion. When the Commission censures a judge who attempts to coerce pleas by threatening

high bail and that same judge excludes attorneys from the courtroom and places persons in custody and handcuffs without employing the procedure for summary contempt, and when the Commission censures another judge who incarcerates persons for a day, a weekend or 45 days while at the same time censuring this respondent who did not jail anyone, the law is being applied in an uneven fashion.

Accordingly, I dissent.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO and R.S. SMITH concur in per curiam opinion; Judge G.B. SMITH dissents in a separate opinion in which Judge READ concurs.

Determined sanction accepted, without costs.