Matter of Astacio (New York State Commn. on Jud. Conduct) (2018 NY Slip Op 06850)

Matter of Astacio (New York State Commn. on Jud. Conduct)

2018 NY Slip Op 06850 [32 NY3d 131]

October 16, 2018

Per Curiam

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, December 19, 2018

[*1]

In the Matter of Leticia D. Astacio, a Judge of the Rochester City Court, Monroe County, Petitioner; New York State Commission on Judicial Conduct, Respondent.

Argued September 5, 2018; decided October 16, 2018

{**32 NY3d at 133} OPINION OF THE COURT

Per Curiam.

After sustaining six charges of misconduct involving petitioner Leticia D. Astacio's behavior both on and off the bench, the State Commission on Judicial Conduct has recommended that [*2]petitioner be removed from her judicial office as a 
Judge of the Rochester City Court, Monroe County. Petitioner does not challenge the Commission's findings of fact and determination to sustain all charges of misconduct. Rather, she asks us to reduce the sanction from removal to censure (see NY Const, art VI, § 22 [d]; Judiciary Law § 44 [7]). We accept the Commission's sanction of removal.
The Commission unanimously concluded, and petitioner concedes, that her actions violated sections 100.1, 100.2 (A); 100.2 (C); 100.3 (B) (3); (E) (1) (a) (i) and 100.4 (A) (2) of the Rules Governing Judicial Conduct (22 NYCRR part 100). The Rules prescribe that judges must "participate in establishing, {**32 NY3d at 134}maintaining and enforcing high standards of conduct" for themselves and others to preserve "the integrity and independence of the judiciary" (22 NYCRR 100.1). Moreover, judges must "respect and comply with the law" and behave at all times in a way that furthers "public confidence in the integrity and impartiality of the judiciary" (22 NYCRR 100.2 [A]) and does not "detract from the dignity of judicial office" (22 NYCRR 100.4 [A] [2]). To that end, it is improper to "lend the prestige of judicial office to advance the private interests of the judge or others" (22 NYCRR 100.2 [C]). When acting in an official capacity, a judge must be "patient, dignified and courteous to . . . [all] with whom the judge deals" and "shall require similar conduct of lawyers . . . and others subject to the judge's direction and control" (22 NYCRR 100.3 [B] [3]). Moreover, in any "proceeding in which the judge's impartiality might reasonably be questioned," a judge must disqualify herself, including where "the judge has a personal bias . . . concerning a party" (22 NYCRR 100.3 [E] [1] [a] [i]).
Petitioner's misconduct in her personal activities stemmed from her conviction for a misdemeanor offense of driving while intoxicated, for which she was sentenced to a one-year conditional discharge (see 22 NYCRR 100.2 [A]). She was discourteous (see 22 NYCRR 100.4 [A] [2]), sought preferred treatment from the arresting officers (see 22 NYCRR 100.2 [C]), and violated the terms of her conditional discharge by ignoring orders of the court and leaving the country for an extended vacation without notice to the court or her lawyer (see 22 NYCRR 100.2 [A]). After a hearing on her second violation of her conditional discharge, petitioner's conditional discharge was revoked, and she was re-sentenced to 60 days' incarceration and three years' probation.
Petitioner also violated the Rules Governing Judicial Conduct in the course of exercising her judicial duties when she failed to disqualify herself from presiding over the arraignment of a former client and attempted to exercise her discretion to have his case transferred in a manner which she thought might benefit him (see 22 NYCRR 100.3 [E] [1] [a] [i]). On other occasions, petitioner made discourteous, insensitive, and undignified comments before counsel and litigants in court (see 22 NYCRR 100.3 [B] [3]).
Initially, we find that petitioner's challenge to her sanction based on the propriety of her hearing before the Commission lacks merit. At the hearing, the Chair questioned petitioner's{**32 NY3d at 135} avowed respect for the Commission by referencing comments purportedly made by the petitioner, which were not in the record. Petitioner contends that those comments reflected the Chair's bias and tainted the Commission's decision to remove her. While it is true that the Commission must adhere to the record in reaching its decision (see Matter of Simpson v Wolansky, 38 NY2d 391, 396 [1975] [administrative agencies may not base their decisions on "evidence or information outside the record"]), here, petitioner fails to point to evidence of a nexus between the Commission's decision and any alleged bias (see Matter of Warder v Board of Regents of Univ. of State of N.Y., 53 NY2d 186, 197-198 [1981], cert denied 454 US 1125 [1981]).
In fact, the Chair assured petitioner and her counsel at the hearing that the Commission [*3]would be "scrupulous" in limiting itself to the record. The Commission further "emphasize[d] [in its determination] that [its] decision [wa]s based solely on the evidence adduced at the hearing and the arguments presented." Our review of the record does not reveal otherwise, as it is bereft of any evidence of a causal relationship between the Chair's comments, alleged bias, and the Commission's decision to remove[FN1] (see Matter of Daxor Corp. v State of N.Y. Dept. of Health, 90 NY2d 89, 101 [1997] [upholding a determination allegedly resulting from bias because the record demonstrated "independent reasons that fully support appellant's determination"]).
As to the appropriate sanction, we note that "[j]udicial misconduct cases are, by their very nature, sui generis" (Matter of Blackburne [State Commn. on Jud. Conduct], 7 NY3d 213, 219-220 [2006]). To that end, this Court "ha[s] never implied that removal is limited to those categories of cases that have formerly come before us" (id.). While "[t]he ultimate sanction of removal typically is 'reserved for truly egregious circumstances that extend beyond the limits of even extremely poor judgment' . . . it must also be kept in mind 'that the truly egregious standard is measured with due regard to the higher standard of conduct to which judges are held' " (Matter of Simon [State Commn. on Jud. Conduct], 28 NY3d 35, 37-38 [2016], quoting Matter of Restaino [State Commn. on Jud. Conduct], 10 NY3d 577, 589, 590 [2008] [some internal quotation marks and citations omitted]).{**32 NY3d at 136}
Here, the circumstances spanning petitioner's collective misconduct qualify as egregious. Specifically, petitioner's judicial role exacerbated her already "very serious crime" of driving while intoxicated (People v Washington, 23 NY3d 228, 231 [2014] [internal quotation marks and citation omitted]) and "undermine[d] [her] effectiveness as a judge" responsible for applying drunk driving laws to others (Matter of Stelling, 2002 WL 31267502, *1-2 [NY St Commn on Jud Conduct, Oct. 1, 2002]). Likewise, magnifying the impact of her DWI conviction and attendant behavior, the record reflects that petitioner appeared to invoke her judicial office to pressure the police to cease processing her arrest (see Matter of LaBombard [State Commn. on Jud. Conduct], 11 NY3d 294, 298 [2008]; see also Matter of Edwards, 67 NY2d 153, 154-155 [1986] [it is "irrelevant" whether a judge overtly requests "favorable treatment or special consideration"]).
Petitioner's behavior at a former client's arraignment, moreover, conveyed the "appearance of favoritism" which was compounded by her decision to exercise her discretion in his favor (LaBombard, 11 NY3d at 298); see also Matter of Duckman, 92 NY2d 141, 153 [1998] ["(T)he perception of impartiality is as important as actual impartiality"]). Similarly, regardless of her intent, petitioner's repeated failure to speak in a dignified manner with defendants, sheriff's deputies, and attorneys demonstrated a lack of "respect toward everyone who appears in a court" (Matter of Romano, 93 NY2d 161, 164 [1999]; see also Matter of Ayres [New York State Commn. on Jud. Conduct], 30 NY3d 59, 66 [2017] [rejecting claim that "snarky language" was taken out of context]; Duckman, 92 NY2d at 153 [rejecting argument that "actual impartiality" counteracted any perceived biases]).
As we have recently stated, "[t]he inability to recognize the seriousness of one's misconduct and the failure to heed a prior warning are significant aggravating factors, and can be grounds for [*4]removal as well" (Ayres, 30 NY3d at 64). We find that the aggravating circumstances here outweigh any mitigating factors (see Matter of Rater, 69 NY2d 208, 209 [1987]). Although petitioner has expressed some contrition and initially took productive steps in response to her DWI arrest, we are unpersuaded that petitioner has genuinely accepted personal responsibility. To the contrary, she continues to point to external factors and justifications as excuses for her behavior. Although we do not expect petitioner to "adopt a posture of {**32 NY3d at 137}obeisance," we do require that she adequately "recognize wrongdoing in order to forestall the inevitable, unfortunate conclusion that, absent a harsher sanction, more of the same will ensue" (Matter of Hart [State Commn. on Jud. Conduct], 7 NY3d 1, 11 [2006]). Here, petitioner's justifications for her conduct indicate she does not truly recognize the essential role her own decisions played in bringing about her current predicament.
Moreover, petitioner ignored multiple prior warnings about the consequences of her continued drinking and failure to comply with her conditional discharge, including that she was subject to revocation of her conditional discharge and re-sentencing (see Ayres, 30 NY3d at 64). Petitioner's decision to engage in a pattern of alcohol-related misconduct and seeming inattention to the court's warning[FN2] offsets her initial laudable efforts to seek substance abuse evaluation and treatment (see Matter of Quinn v State Commn. on Jud. Conduct, 54 NY2d 386, 392 [1981] [emphasizing as an aggravating factor that "a prior admonition for similar conduct proved ineffective"]; see also Matter of Simpson Burke, 2009 WL 5212133,*3 [NY St Commn on Jud Conduct, Dec. 15, 2009] [considering in alcohol-related cases "whether the conduct was an isolated instance or part of a pattern"]).
We cannot view petitioner's actions and the appropriate sanction through a limited prism but must instead consider the full spectrum of her behavior and its impact on public perception of the judiciary (see Matter of Kuehnel v State Commn. on Jud. Conduct, 49 NY2d 465, 468-469 [1980]; Matter of Reeves, 63 NY2d 105, 111 [1984] [the purpose of the sanction is broader than individual "punishment"]; see also 22 NYCRR 100.2 [A]). Significantly, we must consider whether the public has "irretrievably lost confidence in [petitioner's] ability to properly carry out [her] constitutionally-mandated responsibilities in a fair and just manner" (Restaino, 10 NY3d at 590; see also Matter of Esworthy, 77 NY2d 280, 282-283 [1991]). Given petitioner's apparent lack of insight into the gravity and impact of her{**32 NY3d at 138} behavior on both public perception of her fitness to perform her duties and on the judiciary overall, we conclude that any rupture in the public's confidence cannot be repaired.
Accordingly, the determined sanction should be accepted, without costs, and Leticia D. Astacio removed from the office of Judge of Rochester City Court, Monroe County.
Chief Judge DiFiore and [*5]Judges Rivera, Stein, Fahey, Garcia, Wilson and Feinman concur in per curiam opinion.
Determined sanction accepted, without costs, and Leticia D. Astacio removed from the office of Judge of Rochester City Court, Monroe County.

Footnotes

Footnote 1:Indeed, as the Commission noted, its decision was more favorable to petitioner than the referee's initial findings given the Commission's refusal to sustain certain allegations underlying one of the charges.

Footnote 2:While petitioner may be correct that there is no specific condition listed in the conditional discharge prohibiting international or out-of-state travel or explicitly mandating she report a three-month vacation as a "change of address," it cannot be ignored that petitioner's one-way ticket was purchased only two days after yet another failed blow on the ignition interlock device and that her travel caused her inability to comply with the court-ordered alcohol testing.