**HSBC Bank USA, N.A. v Nicholas**

2024 NY Slip Op 31093(U)

April 1, 2024

Supreme Court, New York County

Docket Number: Index No. 850043/2018

Judge: Francis A. Kahn III

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:    **HON. FRANCIS A. KAHN, III**          PART              **32**

                                          *Justice*

--------------------------------------------------------------------X

HSBC BANK USA, N.A. AS INDENTURE TRUSTEE FOR THE REGISTERED NOTEHOLDERS OF RENAISSANCE HOME EQUITY LOAN TRUST 2006-2,

                        Plaintiff,

- V -

NICOLA NICHOLAS AS ADMINISTRATOR OF THE ESTATE OF CECILIA V. MCDOWELL A/K/A CECILIA MCDOWELL, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, ENVIRONMENTAL CONTROL BOARD, PARKING VIOLATIONS BUREAU, JOHN DOE #1 THROUGH JOHN DOE #12

                        Defendant.

--------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 850043/2018 |
| MOTION DATE | |
| MOTION SEQ. NO. | 004 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 004) 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178

were read on this motion to/for           JUDGMENT - SUMMARY      .

The court *sua sponte* vacates its judgment of foreclosure and sale and decision and order on motion dated January 2, 2024, and substitutes the following in its place and stead:

Upon the foregoing documents, the motion and cross-motions are determined as follows:

In this action, Plaintiff seeks to foreclose on a consolidated, extended and modified mortgage encumbering real property identified as 530 West 142nd Street, New York, New York. The mortgage, dated April 28, 2006, was given by Defendant Cecilia V. McDowell a/k/a Cecilia McDowell ("McDowell"), now deceased, to non-party Mortgage Electronic Registration Systems ("MERS") as nominee for Delta Funding Corporation ("Delta"). The mortgage secures a loan with an original principal amount of $650,000.00 which is evidenced by two prior notes.

Plaintiff alleges Mortgagor initially defaulted in repayment of the loan on or about December 1, 2007. Non-party HSBC Bank USA, N.A., as Indenture Trustee for the registered Noteholders of Renaissance Home Equity Loan Trust 2006-2, the alleged noteholder at the time, commenced an action to foreclose the mortgage on July 25, 2008 (*see HSBC v E/O McDowell, et al.*, NY Cty Index No 110214/2008). In that complaint, that Plaintiff pled it elected to declare the entire principal balance due and owing. By stipulation dated order dated May 4, 2011, the parties agreed to discontinue the action pursuant to CPLR §3217. The stipulation contained, among other things, the following language: "IT IS FURTHER AGREED that the statute of limitations for any claims of plaintiff or defendant against the other is hereby tolled from July 22, 2008, the date of the summons herein, until June 1, 2013, whether or not they have been previously pled."

850043/2018  HSBC BANK USA, N.A. AS vs. NICOLA NICHOLAS
Motion No. 004

Page 1 of 6

[* 1]

Plaintiff commenced this action on February 16, 2018, again seeking foreclosure of the mortgage based on the 2008 default. The fiduciary of the estate of the deceased Mortgagor initially answered *pro se* and pled no cognizable affirmative defenses. By order dated April 8, 2019, Justice Arlene Bluth granted Plaintiff's motion to, *inter alia*, file an amended complaint. The present fiduciary of Mortgagor's estate, Nicola Nicholas ("Nicholas") answered via counsel and pled twenty-nine affirmative defenses, including expiration of the statute of limitations.

Now, Plaintiff moves for summary judgment against Defendant Nicholas, to the answer and affirmative defenses, for a default judgment against the non-appearing parties, for an order of reference and to amend the caption. Defendant Nicholas opposes the motion and cross-moves pursuant to CPLR §3212 for summary judgment dismissing Plaintiff's complaint as time barred, relying on the amendments made to the applicable statutes under the Foreclosure Abuse Prevention Act ("FAPA")(L 2022, ch 821 [eff Dec. 30, 2022]). Plaintiff opposes the cross-motion positing, *inter alia*, that FAPA has neither retroactive effect nor application as well as that retroactive application of FAPA would violate the Due Process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and the Takings Clause thereof.

Addressing the cross-motion, FAPA is comprised of multiple amendments to existing statutes and the enactment of new edicts. The express purpose of FAPA, according to the Senate Sponsor Memo, was to "overrule the Court of Appeals' recent decision in Freedom Mtge. Corp. v Engel" as well as certain other judicial decisions perceived to be "inconsistent with the intent of the Legislature" (NY State Senate Bill S5473D at Sponsor Memo, Justification). Similarly, the Assembly Memorandum in Support of Legislation states enactment of FAPA was necessary "to clarify the existing law and overturn certain court decisions to ensure the laws of this state apply equally to all litigants, including those currently involved in mortgage foreclosure actions" (NY State Assembly Bill A7737B at Sponsor Memo, Purpose and Intent of Bill). The decision in *Freedom Mtge. Corp. v Engel*, 37 NY3d 1 (2021) is specifically targeted by FAPA's legislative "response" which "restore[s] longstanding law that made it clear that a lenders' discontinuance of a foreclosure action that accelerated a mortgage loan does not serve to reset the statute of limitations" (*id.*). As to its applicability, Section 10 of FAPA provides that it "shall take effect immediately and shall apply to all actions commenced on an instrument described under subdivision four of section two hundred thirteen of the civil practice law and rules in which a final judgment of foreclosure and sale has not been enforced" (*see* L 2022, ch 821 [eff Dec. 30, 2022]).

FAPA's enactments relevant here include, CPLR §213[4], the applicable statute of limitations, which was amended to provide that "[i]n any action on an instrument described under this subdivision, if the statute of limitations is raised as a defense, and if that defense is based on a claim that the instrument at issue was accelerated prior to, or by way of commencement of a prior action, a plaintiff shall be estopped from asserting that the instrument was not validly accelerated, unless the prior action was dismissed based on an expressed judicial determination, made upon a timely interposed defense, that the instrument was not validly accelerated." (CPLR §214[4][a]).

CPLR §3217 was also amended to add a new subdivision [e] which states that "[i]n any action on an instrument described under subdivision four of section two hundred thirteen of this chapter, the voluntary discontinuance of such action, whether on motion, order, stipulation or by notice, shall not, in form or effect, waive, postpone, cancel, toll, extend, revive or reset the limitations period to commence an action and to interpose a claim, unless expressly prescribed by statute" (CPLR §3217[e]). Relatedly, section 17-105 of the General Obligations Law was amended "to clarify that the statute represents the exclusive means for parties to effectuate a waiver, postponement, cancellation, resetting, tolling, revival or extension of the time limited by

[* 2]

statute for commencement of an action or proceeding based on a cause of action to foreclose a mortgage, in part or whole." (NY State Senate Bill S5473D at Sponsor Memo, Summary of Specific Provisions).

With respect to the applicability of FAPA to previously commenced and pending actions, the Appellate Division, First Department recently held that the statutory amendments therein are to be retroactively applied (*Genovese v Nationstar Mtge. LLC*, ___AD3d___, 2023 NY Slip Op 06477 [1st Dept. 12/19/2023]). That Court reasoned that application of FAPA's amendments to pending litigation furthers the "the Legislature's goal, expressed in the language of FAPA and its legislative history" (*id.*).

Plaintiff also posits that retroactive application of FAPA is violative of its due process rights under the US Constitution as well as the Takings Clause thereunder. As a rule, "[l]egislative enactments enjoy a strong presumption of constitutionality . . . [and] parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity 'beyond a reasonable doubt'. Moreover, courts must avoid, if possible, interpreting a presumptively valid statute in a way that will needlessly render it unconstitutional" (*LaValle v Hayden*, 98 NY2d 155, 161 [2002] [citations omitted]).
The United States Supreme Court recognized almost 30 years ago that the constitutional impediments to retroactive application of civil legislation are "modest" and that without a violation of an explicit constitutional proclamation "the potential unfairness of retroactive civil legislation is not [in and of itself] a sufficient reason for a court to fail to give a statute its intended scope" (*Landgraf*, supra at 267 and 272; *see also Regina*, supra at 365 [Noting the Court of Appeals adoption of the *Landgraf* analytical framework in *American Economy Ins. Co. v State of New York*, 30 NY3d 136 [2017]]).

While entitled to the presumption of constitutionality, retroactive legislation must meet a burden not faced by entirely prospective legislation, specifically that the questioned statute is supported by "'a legitimate legislative purpose furthered by rational means'" (*American Economy Ins. Co. v State of New York*, 30 NY3d 136, 157-158 [2017], *citing General Motors Corp. v Romein*, 503 US 181, 191 [1992]). Explained differently, constitutional muster is passed when "the retroactive application of the legislation is itself justified by a rational legislative purpose" (*Pension Benefit Guaranty Corporation v R. A. Gray & Co.*, 467 US 717, 730 [1984]). When applying this standard, the Court of Appeals has "suggested that, in order to comport with due process, there must be a 'persuasive reason' for the 'potentially harsh' impacts of retroactivity" (*Regina*, supra at 375). The question presented is one of degree requiring consideration of: [1] the length of the retroactivity period as affecting a party's repose, [2] the forewarning of legislative change relevant to reliance on existing law and [3] the public purpose for the statute (*see Replan Dev., Inc. v Department of Housing Preservation & Dev.*, 70 NY2d 451, 456 [1987]; *see also Regina*, supra at 376).

In this case, by making FAPA applicable to all unenforced foreclosure actions –ie. those where are sale has not occurred—the period of retroactivity could, in many cases, be lengthy. Nevertheless, any claim of reliance on the pronouncements by the Court of Appeals in *Engel* is unavailing. Prior to that decision, the Court of Appeals "never addressed what constitute[d] a revocation in [the present] context" (*Engel*, supra at 28). Moreover, the *Engel* court observed that "no clear rule has emerged with respect to the issue raised here— whether a noteholder's voluntary motion or stipulation to discontinue a mortgage foreclosure action, which does not expressly mention de-acceleration or a willingness to accept installment payments, constitutes a sufficiently 'affirmative act.'" (*id.* at 29). In this case, the voluntary discontinuance occurred some ten years before *Engel* was decided and the written de-acceleration attempted.
Plaintiff's claimed reliance on *Engel* and other existing law dovetails into the issue of whether forewarning of a change in the law had any impact under the circumstances. The twenty-two-month period between the ruling in *Engel* (issued February 18, 2021), and the enactment of FAPA (effective December 30, 2022), has been found sufficient in length to support a claim of reliance on *Engel* (*see Matter of Handler, P.C. v*

**850043/2018  HSBC BANK USA, N.A. AS vs. NICOLA NICHOLAS**
**Motion No. 004**

**Page 3 of 6**

3 of 6

[* 3]

*DiNapoli,* 23 NY3d 239, 248-250 [2014]). But closer scrutiny reveals that the legislative reaction which resulted in FAPA was more than conceivable. The issuance of the *Engel* decision was decried by multiple state and local politicians[1]. This included Senator James Sanders who sponsored the original version of FAPA which was introduced less than a month[2] after issuance of the *Engel* decision. Another bill, which would ultimately replace the far broader Senate version[3], was introduced in the Assembly not long thereafter[4]. Given this swift reaction by the legislature and considering that the applicable holdings in *Engel* were questions of first impression before the Court of Appeals which settled an area of the law without clarity, any expected repose by lenders in *Engel* subsisting indefinitely was not reasonable (*see Tegreh Realty Corp. v Joyce,* supra at 100).

The political resolve which gave rise to FAPA is far from new. The Legislature's statutory forays into the area of foreclosure law, particularly residential foreclosures, has been ubiquitous over the last fifteen years. In that period, and before, multiple perceived ills in the home lending and foreclosure arenas have been addressed with the institution of various procedural and substantive requirements that did not exist at common-law[5] as well as the amendment of existing laws. Further, these novel statutes have been routinely amended when application of these edicts were found ineffective or insufficiently expansive. Legislative enactments have also been accompanied by the adoption of various codes, rules and regulations by both executive agencies and the judiciary. Ongoing uncertainty in foreclosure law has been injected by the judiciary as well. In addition to the titanic shift *Engel* caused, the Appellate Division, Second Department's decision in *Bank of America, N.A. v Kessler,* 202 AD3d 10 [2nd Dept. 2021], and its subsequent reversal by the Court of Appeals[6], also generated a flurry of litigation machinations. The upshot of all this is that forewarning to the lending industry of the likelihood of change in any portion of this area of law has not been just heralded these many years, but virtually foregone.

The public purpose of FAPA is well documented in the statute's history and the intention of the legislature that it be applied to all existing cases is express. FAPA's purpose is broadly stated as to protect homeowners from "abuses of the judicial foreclosure process" through "an onslaught of successive foreclosure actions that would otherwise be barred by the statute of limitations". To accomplish this aim, the legislature clearly stated its intention to undo judicial pronouncements which permitted lenders to "manipulate the statutes of limitation to their advantage through clarification and restoration of "long standing law". The desire to protect property owners from foreclosure abuses is rationally based on well documented wide-spread misconduct by certain mortgage lenders (*see eg* Jackie Calmes and Sewell Chan, *President Presses Bid To Rein In Loan Abuse,* NY Times, Jan. 20, 2010 §B at 1, col 0) as well as entities in the mortgage foreclosure business (*see eg* Barry Meier, *A Foreclosure Mess Draws In the Filing Lawyers, Too,* NY Times, Oct. 16, 2010 §B at 1, col 1). The Legislature's repeated references to toppling judicial decisions which it views misinterpreted its intent and to codify opinions in accord therewith, evidence that retroactivity was central to the enactment of

---

[1] *see eg* https://www.nysenate.gov/newsroom/press-releases/2021/james-sanders/senator-james-sanders-jr-pushes-bill-help-stop-unjust.

[2] S5473 was filed March 8, 2021.

[3] For example, the Senate bill included an amendment to CPLR 206 to add a new subdivision [e] that would have set the accrual date of a foreclosure action of certain mortgage instruments "at the first moment in time where the right to demand immediate payment in full may be exercised-not when, if ever, the demand is actually made." Also contained in that version was a proposal to amend CPLR 3212 to "clarify" that a successive motion for summary judgment is a motion affecting a prior order which must be made in accordance with the applicable subdivisions of CPLR 2221 and 5015.

[4] A7737 was filed May 20, 2021.

[5] Since 2000, the following are some of the New York statutes that have been enacted in response to perceived ills, inequities and abuses in the mortgage and foreclosure businesses" CPLR §§3021-b and 3408; RPAPL §§1302, 1302-a, 1303, 1304, 1305, 1306, 1307, 1308, 1393; RPL §§265-a, 265-b, 280-b, 280-d; 22 NYCRR §202.12-a. The federal legislative and regulatory enactments are too legion to recount in this footnote.

[6] *Bank of America, NA v Kessler,* 39 NY3d 317 [2023].

**850043/2018  HSBC BANK USA, N.A. AS vs. NICOLA NICHOLAS**
**Motion No.  004**

Page 4 of 6

FAPA (*see Regina* at 366). Based on the foregoing analysis, the Court determines that, under the circumstances presented, retroactive application of FAPA does not violate Plaintiff's constitutional due process rights.

Plaintiff also asserts that retroactive enforcement of FAPA would violate the Takings Clause of the Fifth and Fourteenth Amendments to the US Constitution. This right proscribes "the Legislature (and other government actors) from depriving private persons of vested property rights except for a 'public use' and upon payment of 'just compensation'" (*Landgraf*, supra at 266). "The threshold step in any Takings Clause analysis is to determine whether a vested property interest has been identified" (*American Economy Ins. Co. v State of New York*, supra at 155). No person has a vested interest or constitutional right in any rule of law entitling them to have the precept remain unaltered (*see I. L. F. Y. Co. v Temporary State Housing Comm.*, 10 NY2d 263, 270 [1961]; *J. B. Preston Co. v Funkhouser*, 261 NY 140, 144 [1933]). Similarly, "[p]arties obtain no vested rights in the orders or judgments of courts while they are subject to review" (*Boardwalk & Seashore Corp. v Murdock*, 286 NY 494, 498 [1941]). Resultantly, Plaintiff in this case had no vested right in either the "savings statute" or any finding of this Court since no unappealable final judgment has been issued (*see U.S. Bank Trust, N.A. v. Miele*, ___Misc3d___, 2023 NY Slip Op 23186 [Sup Ct West. Cty. 2023]).

Plaintiff's reliance on the Contract Clause of the US Constitution is also unavailing. That part proscribes states from "pass[ing] any . . . [l]aw impairing the [o]bligation of [c]ontracts" (*see* US Const, art I, § 10 [1]). "The absolute prohibition set forth in the Contract Clause is not to be read literally; instead, states retain a paramount interest in protecting public welfare through legislation" (*Schantz v O'Sullivan*, 11 AD3d 22, 24 [3d Dept 2014]). As a result, "the State may impair such contracts by subsequent legislation or regulation so long as it is reasonably necessary to further an important public purpose and the measures taken that impair the contract are reasonable and appropriate to effectuate that purpose" (*Crane Neck Ass'n v New York City/Long Island County Servs. Group*, 61 NY2d 154, 167 [1984]). The United States Supreme Court has fashioned a three-part test to discern whether a piece of legislation violates the Contract Clause (*see Energy Reserves Group v Kansas Power & Light Co.*, 459 U.S. 400, 411-412 [1983]). The initial inquiry is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship" (*Allied Structural Steel Co. v Spannaus*, 438 US 234, 244 [1978]). The extent of the impairment is a factor, but eradication of contractual expectations is not required (*id.*). Also considered is "whether the industry the complaining party has entered has been regulated in the past" (*id.*).

In this case, Plaintiff has cited no provision of the note, mortgage or other loan documents that have been impaired. All those documents are silent as to what act would constitute a de-acceleration of the indebtedness or any precatory requirements. Notably, no right to unilateral de-acceleration is afforded Plaintiff in the loan documents. Thus, no contract provision on this issue is substantially modified by retroactive application of FAPA to this action. Any claim that a common-law implied right to unilateral revocation existed before *Engel* was decided is unavailing. As noted above, prior to *Engel*, the Court of Appeals "never addressed" whether a voluntary discontinuance or stipulation which did not mention de-acceleration or readiness to accept installment payments de-accelerated the indebtedness (*Engel*, supra at 28). Moreover, the Court in *Engel* observed that absent a precise provision on this issue in the operative documents, "no clear rule" appellate rule emerged as to whether this right existed (*id.* at 29). Lastly, as also recounted supra, the mortgage industry and foreclosure business, particularly in the preceding two decades, has been subject to regular and robust legislative regulation. Therefore, no substantial impairment of Plaintiff's right to contract is demonstrated by retroactive application of FAPA. As the existence of a substantial impairment is a "threshold inquiry", the absence of same obviates any need for an analysis of the remaining two factors (*see 19th Street Assoc. v State*, 79 NY2d 434, 442 [1992]).

**850043/2018  HSBC BANK USA, N.A. AS vs. NICOLA NICHOLAS**
**Motion No. 004**

Page 5 of 6

5 of 6

[* 5]

Based on the foregoing, the amendments instituted in FAPA will be applied in determining the cross-motion pursuant to CPLR §3211[a][5]. On a motion to dismiss a cause of action as barred by the statute of limitations, the movant bears the initial burden of showing *prima facie* that the time to sue has expired (*see Wilmington Sav. Fund Socy., FSB v Alam*, 186 AD3d 1464 [2d Dept 2020]; *Benn v Benn*, 82 AD3d 548 [1st Dept 2011]). To meet its burden, "the Defendant must establish, *inter alia*, when the Plaintiff's cause of action accrued" (*Lebedev v Blavatnik*, 144 AD3d 24, 28 [1st Dept 2016], *quoting Cottone v Selective Surfaces, Inc.*, 68 AD3d 1038, 1041 [2d Dept 2009]). The commencement of the 2008 action was an unequivocal act of acceleration of the debt. Among other things, the complaint expressly stated that Plaintiff was elected to declare the entire principal balance to be due and owing. Based upon the foregoing, Defendant established that the statute of limitations in this matter accrued in 2008 and that more than six-years transpired before this action was commenced. Plaintiff's claim of de-acceleration by voluntary discontinuance of the action in 2011 did not reset the statute of limitations (CPLR §3217[e]; *CIT Bank, NA v Byers*, ___AD3d___, 2023 NY Slip Op 04978 [2d Dept 2023]).

In opposition, Plaintiff's reliance on the provision in the stipulation of discontinuance which attempted to toll the statue of limitations is unavailing. In pertinent part, GOL §17-105[4] provides that:

> An acknowledgment, waiver, promise or agreement, express or implied in fact or in law, shall not, in form or effect, postpone, cancel, reset, toll, revive or otherwise extend the time limited for commencement of an action to foreclose a mortgage for any greater time or in any other manner than that provided in this section, unless it is made as provided in this section.

Where, as here, the writing at issue is made after the statute of limitations accrues, for the agreement to conform with this section it must be signed by the party to be charged and contain an express "promise to promise to pay the mortgage debt" (GOL §15-105[1]; *see 14 Film Corp. v Mid-Island Mtge. Corp.*, 218 AD3d 525 [2d Dept 2023]). In this case, the stipulation dated May 4, 2011, is not signed by Nicolas and, more importantly, does not contain a promise to pay the outstanding debt. Thus, this stipulation is not compliant with GOL §17-105 and fails to toll the statute of limitations (*see Petito v Piffath*, 85 NY2d 1, 8-9 [1994]).

Accordingly, it is

ORDERED that Defendant Nicholas' cross-motion to dismiss the Plaintiff's complaint pursuant to CPLR §3211[a][5] is granted, and it is

ORDERED that Plaintiff's motion for, *inter alia*, summary judgment is denied.

| 4/1/2024 | | | | | |
|---|---|---|---|---|---|
| **DATE** | | | | HON. FRANCIS A. KAHN III | J.S.C. |
| **CHECK ONE:** | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
| | X | GRANTED | ☐ DENIED | GRANTED IN PART | ☐ OTHER |
| **APPLICATION:** | ☐ | SETTLE ORDER | | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | ☐ | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | ☐ REFERENCE |

850043/2018  HSBC BANK USA, N.A. AS vs. NICOLA NICHOLAS                Page 6 of 6
Motion No. 004

6 of 6